CITY OF MANITOWOC, Appellant, v. MANITOWOC POLICE DEPARTMENT and others, Respondents.

*No. 799 (1974). Argued November 24, 1975.—*
*Decided December 19, 1975.*
(Also reported in 236 N. W. 2d 231.)

For the appellant there was a brief and oral argument by *Paul D. Lawent,* city attorney.

For the respondent there was a brief by *Richard V. Graylow, Donald R. Rittel* and *Lawton & Cates,* all of Madison, and oral argument by *Mr. Graylow.*

HANLEY, J. The following issues are presented on this appeal:

1. Did the award exceed the scope of the subject matter submitted for arbitration?

2. Must the award be vacated because of the arbitrator's claimed refusal to consider evidence submitted after the hearing?

3. Did the arbitrator engage in misconduct by failing to consider the relevant criteria of sec. 111.77 (6), Stats.?

4. Was the award procured through undue means?

5. Has the appellant waived any of the above complaints?

*Excess of power.*

One motion to vacate was premised on paragraph (d) of sec. 298.10 (1), Stats., in that the amended award determined matters beyond the scope of the issues framed for arbitration, thereby constituting an imperfect execution or excess of powers granted the arbitrator.

The city's final offer on the issue of residency consisted of a rule in the bargaining agreement requiring residency within six months following the initial hiring probationary period. Local 731 denied the inclusion of the city regulation in the agreement. Testimony established that a de facto policy of residence was enforced by the city. No regulation had been put into past bargaining agreements, although the subject had been held arbitrable. The first award by Hales provided that the provision was to be included in the agreement. In the amended award the determination was "[t]hat police officers shall not be required to live within the City of Manitowoc."

The trial court held that although the language employed in the amended award would indicate that the arbitrator misconstrued the issue, a reading of the award in the context of the process involved cured such defect. Reference was made to the first award, which merely stated that the residency provision "shall be included in the 1974 Collective Bargaining Agreement" rather than repeating the entire provision as contained in the city's final offer. The determination that the city shall not require residency, when read in conjunction with the statement that "this award shall run concurrent with the party's 1974 collective bargaining agreement," was viewed by the reviewing court to indicate only that the

residency clause could not be included in the final agreement. Local 731 agreed with this ruling.

In regards to a challenge to an arbitration award on the basis that it exceeded the scope of the submission, this court noted that:

" '. . . It is enough if a common intent as to what was submitted appears with reasonable certainty. 5 Corp. Jur. p. 36. If what was submitted appears by manifest implication it is as certain as if positively expressed.' " *Strudell Asphalt, Inc. v. Bernstein* (1965), 29 Wis. 2d 184, 192, 138 N. W. 2d 209, quoting *Putterman v. Schmidt* (1932), 209 Wis. 442, 447, 245 N. W. 78.

Witnesses for the city stressed the good reasons for a residency requirement, while Local 731's bargaining agent chose to cross-examine them as to the relevancy and efficacy of their claims. The city's brief submitted to the arbitrator contains the same emphasis, although reiterating that the question involved a provision in the collective bargaining agreement. The brief also noted that a prior Wisconsin employment relations commission determination had found this issue to be arbitrable over an ordinance requiring residence.

In *Libby, McNeill & Libby v. WERC* (1970), 48 Wis. 2d 272, 179 N. W. 2d 805, this court recognized the duty to bargain on arbitrable issues or on effects of a decision in an unarbitrable area. To declare that the arbitrator erred by not awarding the form of the issue now asserted by the city as proper would be to impliedly sanction avoidance of that duty. The parties would be left in the same position as if arbitration had not occurred. Since an arbitration award must finally settle the controversy, *Garstka v. Russo* (1967), 37 Wis. 2d 146, 150, 154 N. W. 2d 286, the issue must be phrased to that end.

The arguments and evidence presented to arbitrator Hales indicated that the parties desired the core issue settled. Only the form of their submitted statements

would lead to the conclusion that Local 731 desired an award that left the core issue undetermined. This result could not be sanctioned by the established law regarding arbitration. The error lay in the inappropriate, unarbitrable phrasing of the dispute, not in the arbitrator's fashioning of a complete and final determination of the subject.

Although sec. 111.77 (4) (b), Stats., the form of arbitration under which the parties were proceeding, declares that the arbitrator shall select the final offer of one of the parties and then issue an award incorporating that offer "without modification," such language does not forbid restatement of the offer to comprise a proper, final arbitration award. The statutory language clearly refers to alterations of items in the offer contrary to the intent of the offering party.

The trial court should have modified the award, via sec. 298.11 (1) (c), Stats., to state that the 1974 collective bargaining agreement shall contain a provision repudiating the requirement of residency for employment, rather than attempting to construe the award in a form that left the core issue unsettled. The option to vacate because the issue seemed unarbitrable, *Detroit Demolition v. Burroughs* (1973), 45 Mich. App. 72, 205 N. W. 2d 856, 860, need not be required when modification can forge a final determination.

We conclude that the award did not exceed the scope of the subject matter submitted for arbitration.

*Admission of evidence.*

Vacation of the award is also urged by the city on the basis of paragraph (c) of sec. 298.10 (1), Stats., in that the arbitrator was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy. The statute applicable to law enforcement bargaining disputes provides that the arbitrator shall give weight to:

" . .

"(d) Comparison of the wages, hours and conditions of employment of the employes involved in the arbitration proceeding with the wages, hours and conditions of employment of other employes performing similar services and with other employes generally:

"1. In public employment in comparable communities.

"2. In private employment in comparable communities.

" . . .

"(g) Changes in any of the foregoing circumstances during the pendency of the arbitration proceedings." Sec. 111.77 (6), Stats.

Prior to the first award, but after the close of the hearing, a collective bargaining agreement was reached between the city and the bargaining unit for the police supervisory and detective employees. Since arbitrator Hales had requested that the parties submit post-hearing written memoranda of their closing arguments, the city appended copies of that agreement and the agreement of the preceding year to its brief. In a letter dated June 21, 1974, Wilson protested the consideration of these items by Hales. On June 24, 1974, the day the first award was issued, Hales sent a reply letter to Wilson noting that the objection was proper and that he had not considered the appended items.

The use of "proceedings" in the statute provision regarding consideration of any changes in circumstances during the pendency of the proceedings is broader than "hearing" as used in sec. 298.06, Stats. No good reason exists for requiring a special provision calling for consideration at a hearing of changes in items already introduced in the hearing: the relevancy of such changes would exist as a matter of course while the hearing was in progress. The provision most likely refers to circumstances changed after the hearing but still "during the pendency of the proceedings."

Sec. 34 of the Commercial Arbitration Rules of the American Arbitration Association provides a system that is persuasive of the above interpretation. The end of the oral hearing usually terminates the process, but:

"If briefs are to be filed, the hearings shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided for in Section 31 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing." Domke, *Law and Practice of Commercial Arbitration* (1968), 400.

Local 731 contends that Hales correctly excluded the appended items from his consideration. Allowing post-hearing submission of evidence is cited as defeating the purpose of a hearing. The trial court disapproved of this attempt to introduce new evidence "in *ex parte* fashion without notice to the respondent and without affording the respondent an opportunity to examine or cross-examine witnesses about the new evidence." It accordingly found no misconduct on the part of the arbitrator. We agree with that finding. The record shows no motion or other attempt by the city to call for a reopening for the consideration of new evidence. Fairness in arbitration certainly demands that each party have notice and an opportunity to review the statutorily relevant evidence.

The city also claims that arbitrator Hales was required to take judicial notice under sec. 902.03 (1), Stats., of the city resolution accepting the bargaining agreement with the police supervisors. The statute provides only for *courts* of this state to take judicial notice of county and municipal ordinances and rules of state agencies. No authority is offered for the interpretation that extends it to arbitrators and city resolutions.

*Review of award.*

A third motion to vacate was based on the flexible provision of sec. 298.10 (1) (c), Stats., that allows vacation for:

". . . any other misbehavior [by the arbitrator] by which the rights of any party have been prejudiced; . . ."

The city contends that Hales failed to consider the factors made relevant by sec. 111.77 (6).

In addition to the previously mentioned factor of the conditions, wages and hours of comparable employees elsewhere, the statute calls for the arbitrator to "give weight" to the lawful authority of the employer, stipulations of the parties, the interests and welfare of the public and the financial condition of the employer, overall compensation and benefits received by the employee and the cost of living. Changes in these conditions, as mentioned, are also relevant, and a catch-all clause allows consideration of:

"Such other factors, not confined to the foregoing, which are normally or traditionally taken into consideration in the determination of wages, hours and conditions of employment . . . ." Sec. 111.77 (6) (h), Stats.

The city takes the position that this court must vacate an award if such does not in any reasonable fashion indicate that the arbitrator has made the "statutory comparisons." The city bases much of its criticism on the brevity of the decision accompanying the award. Such criticism is inappropriate in light of the common-law rule that an arbitrator need not render an account of the reasons for his award. 5 Am. Jur. 2d *Arbitration and Award,* p. 614, secs. 126, 127 (1962); 6 C. J. S., *Arbitration,* p. 323, secs. 99–100 (1975). *Steelworkers v. Enterprise Corp.* (1960), 363 U. S. 593, 596, 598, 80 Sup. Ct. 1358, 4 L. Ed. 2d 1424.

A written decision is not required by the arbitration chapter, and is at best implied by the requirement that the arbitrator weigh suggested criteria.

The city is actually questioning the propriety of the award. In testimony before the trial court, Hales declared that he had considered the statutory criteria in making the award. His written decision accompanying the amended award was quite summary, but it must be read in conjunction with his earlier, vacated award. The parties requested that he issue an award that conformed with the statute. To correct this error he was required to reverse his stand on one of the issues, even though he must be presumed to have arrived at that initial conclusion in good faith. There was thus no need for Hales to justify his position again on the issue that remained unreversed. His decision on the pension issue in the first award had fully explored the few arguments made regarding it, and it is frivolous for the city to question the second award on that issue merely because Hales did not repeat this analysis in his written explanation.

His reversal on the residency issue was also only briefly justified, obviously because his initial impression on that issue directed an award in favor of the city. Even in so ruling, Hales found certain of the city evidence "not totally persuasive" and concluded that the union "has not met the burden of showing the unreasonableness" of the residency requirements. Hardly demonstrating enthusiasm for the city's offer on this issue, it is not alarming that Hales abandoned this position when forced to uphold one party's total offer in light of all the factors of this arbitration.

The city notes that Local 731 introduced no oral testimony. In fact, the union chose to cross-examine the city's witnesses, challenging their beliefs as to the necessity of the residency requirement and noting that the city had offered the pension increase in earlier negotiations. The

city claims that "[a]ll the union did was introduce a contract from the City of Fond du Lac which is some sixty miles from Manitowoc." In fact, the union introduced 10 exhibits, seven of which were collective bargaining agreements of municipal employees of area communities. One exhibit was a booklet setting forth the area, central and eastern Wisconsin, with population figures, cost of living, payments to the Wisconsin retirement fund and provisions as to residency. The city introduced 27 exhibits; approximately 15 of them were ordinances regarding residency, which were of little probative value once the issue was found arbitrable. Contracts with other Manitowoc city employees and from other cities also were introduced.

The city mentions that a mutual aid pact, which Hales cited in his decision accompanying the amended award as diminishing any burden the city would endure by non-resident police officers, was not in evidence. Although no document containing the terms of this pact was introduced, a city's witness on direct and cross-examination referred extensively to its operations.

There being evidence on the record in support of the award made, vacation on the basis of misconduct by an award wholly without support is not "clearly and convincingly" shown. *Scherrer Construction Co. v. Burlington Memorial Hospital* (1974), 64 Wis. 2d 720, 726, 735, 221 N. W. 2d 855. *See also: Communications Equipment Workers, Inc. v. Western Elec. Co.* (D. C. Md. 1970), 320 Fed. Supp. 1277, 1280.

*Undue means.*

The final basis cited for vacation of the award is grounded on sec. 298.10 (1) (a), Stats., where "the award was procured by corruption, fraud or *undue means.*" This argument was contained in the city's first

motion to vacate, and is based on the telephone contact between Hales and Wilson after the first award.

Consideration must be given to the construction of "undue means." One court has chosen to interpret the phrase to embrace gross mistakes of law or fact that result in a total failure of the intent to arbitrate, or which suggest fraud or misconduct. *Local Union 560 v. Eazor Express, Inc.* (1967), 95 N. J. Super. 219, 230 Atl. 2d 521, 525. This is more properly directed to sec. 298.10 (1) (d), Stats., of our law, where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter" was not made. *See: Putterman v. Schmidt, supra.*

"Undue means" would aptly include those attempts to influence the arbitrator where no overt corruption or fraud is shown, as generally asserted by the city. Misconduct under this provision may arise in other circumstances also. Rothstein, *Vacation of Awards for Fraud, Bias, Misconduct and Partiality,* 10 Vand. L. Rev. (1957), 813, 817–819. The trial court grasped the essence in its construction of the term in light of its conjunction with corruption and fraud that:

". . . one must conclude the term 'undue means' to include a more comprehensive area of acts of fraud and corruption while simultaneously restricting such expanded area of acts to those acts which are inappropriate, unjustified or improper methods of procuring an arbitration award."

Contacts between the arbitrator and one party, outside the presence of the opponent, in themselves do not justify vacating an award to the party involved. This is so where there appears to be either no improper intent or influence was not shown. *First National Bank v. Clay* (1942), 231 Iowa 703, 2 N. W. 2d 85, 92.

To vacate an award under the term "undue means," the complaining party here should demonstrate through

clear and convincing evidence that the *ex parte* contact was in fact improper.

In the trial court, Hales and Wilson testified to the substance of their conversation. The structure of the first award, not conforming to the "final offer" procedure, prompted Wilson to attempt to contact the WERC and to contact Hales. Hales testified that Wilson informed him that a mistake might have been made, and he confirmed this by a review of the statute. The arbitrator then informed Wilson that he would issue an amended award if the parties so stipulated. No further conversation was held. Hales affirmed that no discussion on the merits took place.

Impropriety is not demonstrated. Circumstantial evidence and innuendoes produced by the city do not constitute "clear and convincing" evidence of undue means.

*Waiver and estoppel.*

No consideration is given on this appeal by the city to the lower court's finding that the city waived any objection it could have as to the contact between Hales and Wilson. Waiver applies equally well to any claim of error concerning Hales' consideration of "new evidence" submitted by the city.

The letter from Wilson objecting to the consideration of the new evidence and the reply letter of Hales both noted that copies were being sent to the city attorney. Hales' letter to Wilson, issued the day of the telephone conversation and describing the matters discussed, also directed a copy to the city attorney. Two days later, on June 28, 1974, the parties stipulated to vacate the award and allow Hales to make an amended "Final Offer" choice.

Although the record does not establish that the city attorney received the letters prior to the stipulation, no claim is raised here that they were not. Waiver and

estoppel are established doctrines in the field of arbitration. A party cannot attack procedural irregularities after an award when he was aware of them earlier but remained silent until an unfavorable outcome. 5 Am. Jur. 2d, *Arbitration and Award*, p. 653, sec. 183. Here the city did not merely stipulate to vacate the erroneous award; it also allowed return to Hales, knowing full well that the portion of the award favorable to it could be overturned. It could have stipulated to a new arbitrator, or to a rehearing which would guarantee the admission of its "new evidence."

The city also claims that the totality of the record in this case presents a situation which warrants the exercise of this court's discretionary power of reversal under sec. 251.09, Stats. We do not agree. No facts have been advanced to show there has been a probable miscarriage of justice and no showing that a new arbitration hearing would probably result in a different award. The city's mere assumptions are insufficient to warrant an application of sec. 251.09.

*By the Court.*—Order affirmed.