McCORD, Judge.
This appeal is from a final summary judgment granting appellee’s motion therefor to enforce an arbitration award. The summary judgment ratified a monetary award in favor of appellee and entered judgment. We affirm.
Appellant discharged appellee, manager of its dinner theatre in Jacksonville, and then filed suit against appellee alleging that appellee had diverted funds from appellant corporation for his personal benefit. Appellee moved to dismiss that action on the ground that appellant’s sole remedy was by recourse to arbitration as provided in the employment agreement between appellant and appellee. The court treated appellee’s motion to dismiss as a request for arbitration pursuant to the employment agreement between appellant and appellee. The agreement provided that “termination of employment for good cause” shall be determined by arbitration as set forth in paragraph 12 thereof and that the parties shall be bound according to the terms set forth in that paragraph. Paragraph 12 provides:
The parties hereto do agree that any differences, claims or matters in dispute arising between them out of this agreement or connected herewith shall be submitted by them to arbitration by a committee of three (3) persons chosen as follows:
The corporation shall choose one arbitrator, the manager shall choose one arbitrator, and the two arbitrators so chosen shall choose a third arbitrator, and the three arbitrators so chosen shall hear all and any differences, claims, or matters in *512 dispute arising out of this agreement or connected herewith. The findings of the arbitrators on any such matter shall be final and absolute, and the parties hereto agree to be bound by such arbitration. In the event either party fails or refuses to appoint an arbitrator as herein set out and continues such nonperformance for a period of ten (10) days after formal request in writing so to do, then the arbitration may be completed by those complying parties without the joinder of the noncomplying party, and such arbitration shall be binding upon all parties to this agreement.
After entry of the order directing arbitration, by letter of February 1, 1978, appel-lee’s attorney, Barry L. Zisser, asked appellant’s attorney, Joseph M. Gliekstein, Jr., if, in view of appellee’s dire financial circumstances, they could agree to one arbitrator hearing the case as opposed to three. Gliekstein, by his letter of February 6,1978, responded suggesting that Stephen Werber be designated as arbitrator. Then by letter of February 8, 1978, Zisser responded suggesting that C. Ray Greene, Jr., be designated as the arbitrator. By his letter of the following day, Gliekstein responded, stating that he could not agree to Greene because he had been representing Greene’s wife in connection with marital disputes. From then until November 16, 1978, there was no further correspondence between the two attorneys relating to the appointment of arbitrators, but there was correspondence during that period related to possible settlement of the controversy. Then, in his letter of November 16, Zisser submitted to Glick-stein the name of C. Ray Greene, Jr., as appellee’s arbitrator if his last settlement offer was rejected, requested confirmation from appellant’s attorney as to the name of appellant’s arbitrator and stated that he would submit to him a list of dates compatible with the schedules of Greene and his clients for the taking of testimony. Glick-stein’s letter of November 21, 1978, stated: “You will recall that we appointed Stephen A. Werber as plaintiff’s arbitrator some months ago.” Then followed a statement regarding the settlement negotiations. This was followed by Zisser’s letter of November 29 reiterating that appellee had appointed Greene as his arbitrator some months ago and further referred to settlement. Then followed settlement letters from Gliekstein on November 30 and Zisser on December 13, 1978.
The next correspondence was a letter from Zisser to Gliekstein dated March 19, 1979, stating that he had attempted to set the matter for arbitration with Gliekstein “on not less than 10 separate occasions in the last 120 days.” He further stated, “Because of my client’s demands that this matter proceed without any other unnecessary delays, you are to consider this letter as a formal notification to you of our request to arbitrate immediately.” He further stated, “I am, therefore, taking the liberty of enclosing herewith certain dates which are available on my calendar to utilize for securing the arbitrators attendance. As I advised you previously, my arbitrator will be C. Ray Greene, Jr., and I understand yours is Stephen Werber. Would you please confer with your arbitrator so that we can resolve this matter once and for all and establish a full day for this hearing.” Then on April 9, 1979, Zisser again wrote Gliekstein advising that he had been unable to secure any responses from him with regard to Zisser’s request for arbitration. Then on May 7, 1979, Zisser wrote Glick-stein as follows:
Another month has now elapsed and still I have not received any information from you with regard to a convenient date for the arbitration proceedings. I would like you to advise me once and for all of your client’s intentions in this matter. I feel that my good nature has been severely compromised and, further, that you are taking advantage of our friendship. For that reason, I must insist that some response, other than the acknowledgment of my letter, be received.
Gliekstein returned this letter to Zissner with the word “baloney” written at the bottom of it.
By his letter dated May 8, 1979 (sent certified mail, return receipt requested), Zisser stated to Gliekstein:
*513 Although I have written 18 letters to you demanding your compliance with the request for the establishment of an arbitration proceeding, you have chosen to disregard and ignore the same. I am therefore advising you that I intend to proceed with the establishment of the arbitration hearing, using only the arbitrator selected by Mr. Johnson, under the provisions granted in the contract. As a result of our decision, I will, although not compelled to do so, send to you a copy of the arbitrator’s decisions rendered.
I will withhold the issuance of the notice to my arbitrator, allowing you to comply with the contract, until 5:00 o’clock p. m., Friday, May 11, 1979.
If I have not heard from you by that time, I intend to proceed unilaterally under the provisions as granted in the Employment Agreement.
The return receipt showed this letter was received on May 10, 1979.
In an affidavit of Werber filed in the cause, he states that during late January or early February 1978 he was contacted by Glickstein who requested that he accept an appointment as an arbitrator in the controversy and that he accepted it; that thereafter he was never contacted by appellee’s arbitrator Greene; that he was at all times ready, willing, and able to meet with Greene, designate an umpire and proceed with arbitration proceedings. In his testimony taken at the hearing on the motion for summary judgment, Werber testified as follows in answer to the following question:
Q. All right, sir. From that date, whenever it was, late January or early February, until and including June of 1979, had you had any further contact at all from Mr. Glickstein with regard to this appointment as an arbitrator?
A. Not that I can recall. Except maybe for a few months afterward, whenever the date was — it was January or February of ’78. Sometime afterwards he reiterated that I would — would I be the arbitrator, or I’m going to be the arbitrator. Something of that nature.
In an affidavit of Zisser filed in the cause, he relates the substance of a telephone conversation he had with Werber on May 24, 1979. Appellant filed a motion to strike the affidavit on the ground that it contained inadmissible hearsay. The trial court did not rule on the motion. Appellant argues here that the motion should have been granted; that the statements of Zisser in the affidavit as to statements made to him by Werber in the telephone conversation are hearsay. We agree and give no consideration to the alleged statements of Werber.[1]
Without any response from Glickstein to Zisser’s letter on May 8, 1979, and to Zis-ser’s repeated entreaties to move forward with the proceedings, the arbitration hearing was held without further notice pursuant to the May 8 letter by the single arbitrator Greene subsequent to May 24, 1979 (the record does not show thé date), and the arbitrator entered his award on May 31, 1979.
Thereafter, on June 11, 1979, Zisser served a copy of notice of hearing of his motion to enforce the award of the arbitrator on Glickstein and requested by memo to be advised if Glickstein would like to attend the hearing. By Glickstein’s letter of June 13, 1979, to Zisser, he stated that he would oppose the motion for enforcement of the award; that he believed the arbitration proceedings conducted unilaterally by Mr. Greene were invalid. He mentioned that an examination of the original court file discloses the entry of an order of dismissal on February 19, 1979, and he stated:
As you already know, the decision not to participate was based squarely on the fact that the litigation had come to an end and that no action was pending after the expiration of the 30-day appeal period.
*514 By the foregoing letter, Glickstein acknowledged on behalf of his client that he had no intention of his client taking part in the arbitration proceedings. It does not appear that appellant, either in the trial court or here on appeal, has contended that the arbitration proceedings were invalid because of the dismissal of the original proceeding out of which arbitration was ordered. The summary judgment here on appeal was entered on appellee’s complaint filed June 29, 1979, to enforce the arbitration award.
Appellant contends that the trial court erred (1) in confirming the award of the single arbitrator since the procedure for selection of arbitrators was not followed; (2) in confirming the award despite undisputed testimony that the arbitrator appointed by appellant was not present at the only arbitration hearing held; (3) in refusing to set aside the arbitration award for failure to give proper notice of the arbitration hearing; and (4) in failing to vacate the award because it violated constitutional due process.
Waiver and estoppel are established doctrines in the field of arbitration. City of Manitowoc v. Manitowoc Police Department, 70 Wis.2d 1006, 236 N.W.2d 231 (1975); see also 5 Am.Jur.2d, Arbitration and Award § 112. Also compare Maine Cent. R. Co. v. Bangor & Aroostook R. Co., 395 A.2d 1107, 1122 (Maine 1978). Further, as was stated by the Supreme Court of Washington in Puget Sound B. & D. Co. v. Lake Washington Shipyards, 1 Wash.2d 401, 96 P.2d 257 (1939):
Complementary to this absolute right to be heard, to which the parties are entitled in arbitration proceedings, is the right, found in the doctrine of waiver, to excuse its performance. That doctrine is one of the most familiar in the law, is of general application, and extends to rights and privileges of every character.
A right which one may enforce or insist upon, he may also repudiate or relinquish. Although the relinquishment must be voluntary and intentional, it may be either express or implied. It may arise from an express declaration of an intention not to claim the right, or it may be the result of acts or conduct which are inconsistent with the continued assertion of the right in question. The authorities cited above recognize the application of this doctrine to matters pertaining to the rights of persons concerned in arbitration proceedings. This court, in common with all others, has recognized it...
By his actions (or nonaction) Mr. Glickstein waived appellant’s right to be heard and impliedly revoked or waived his previous designation of Mr. Werber as appellant’s arbitrator. Under these circumstances, arbitrator Greene was authorized under paragraph 12 of the Employment Agreement to proceed as sole arbitrator without further notice to appellant. The record shows that over a considerable period of time, Mr. Glickstein stonewalled all attempts of Mr. Zisser to move the arbitration proceedings to a hearing and conclusion. In addition, Mr. Glickstein has not contended and the record does not show that prior to the entry of the arbitration award, he ever made any objection (to arbitrator Greene or Mr. Zis-ser) as to the procedure which Mr. Zisser had advised him would be followed. He was given full opportunity by Mr. Zisser to make such objection and to arrange for his arbitrator to participate. Not only did he not contact Mr. Zisser or Mr. Greene regarding the matter, but his letter of June 13,1979, to Zisser clearly shows that he had no intention of participating in the proceeding.
AFFIRMED.
WENTWORTH, J., and LILES, WOOD-IE A., (Retired) Associate Judge, concur.

. This eliminates any necessity that we consider on our own motion whether or not Mr. Zisser should have at that point withdrawn as counsel for appellee under DR5-102, Code of Professional Responsibility. See Live & Let Live, Inc. v. Carlsberg Mobile, 388 So.2d 629 (Fla. 1st DCA 1980).