IN the Matter of an Interest Arbitration:

LA CROSSE PROFESSIONAL POLICE ASSOCIATION, Petitioner-Respondent,

v.

CITY OF LA CROSSE, Respondent-Appellant.†

Court of Appeals

*No. 96–2741. Oral argument April 14, 1997.—Decided June 5, 1997.*

(Also reported in 568 N.W.2d 20.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven L. Weld* and *Brian H. Wright* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire. Oral argument was by *Steven L. Weld*.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Gordon E. McQuillen* of *Cullen, Weston, Pines & Bach* of Madison. Oral argument was by *Gordon E. McQuillen*.

Before Eich, C.J., Vergeront and Deininger, JJ.

DEININGER, J. The City of La Crosse appeals an order vacating an interest arbitration award issued pursuant to § 111.77(4)(b), STATS.[1] We conclude that the circuit court did not err when it vacated the award under § 788.10(1)(d), STATS.,[2] on the grounds that the

---

[1] Section 111.77, STATS., establishes procedures for "[s]ettlement of disputes in collective bargaining units composed of law enforcement personnel and fire fighters." If a municipal employer and a bargaining unit arrive at "impasse" in their efforts to collectively bargain an employment agreement, either may petition the Wisconsin Employment Relations Commission to "initiate compulsory, final and binding arbitration of the dispute," which may take one of two alternative forms. The statutory requirements for the form of arbitration at issue in this case are as follows:

(4)(b) Form 2. The commission shall appoint an investigator to determine the nature of the impasse. The commission's investigator shall advise the commission in writing, transmitting copies of such advice to the parties of each issue which is known to be in dispute. Such advice shall also set forth the final offer of each party as it is known to the investigator at the time that the investigation is closed. Neither party may amend its final offer thereafter, except with the written agreement of the other party. The arbitrator shall select the final offer of one of the parties and shall issue an award incorporating that offer without modification.

[2] Section 788.10(1), STATS., provides that a court "must make an order vacating the award":

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

92

arbitrator exceeded his powers and failed to issue a "mutual, final and definite award." We therefore affirm the circuit court's order.

## BACKGROUND

In the fall of 1993, the City of La Crosse and the La Crosse Professional Police Association began negotiations on a successor to the existing collective bargaining agreement between them, which was to expire on December 31, 1993. In November, the Association petitioned for arbitration under § 111.77(3), STATS.; an arbitrator was appointed and proceedings before the arbitrator commenced on September 21, 1994.

The final offers of the Association, dated April 12, 1994, and the City, May 26, 1994, placed two matters in contention: The Association sought to remove the City's employee residency requirement from the existing contract and to maintain existing provisions regarding health insurance; the City sought to maintain the residency requirement and to modify existing health insurance provisions in several regards. After the first day of the arbitration hearing, the City requested permission of the Wisconsin Employment Relations Commission (WERC) to amend its final offer, saying that certain health insurance revisions in its final offer were a "mistake[ ]." Specifically, the City wanted to amend its final offer "to reflect the status quo language of the [existing agreement]." The Association objected to the City's request, and the City subsequently withdrew it.

After three more days of hearing, for which "[n]o formal record was kept other than the arbitrator's handwritten notes," and the submission of briefs, the arbitrator issued an award on May 24, 1995, incorpo-

rating the City's final offer. In so doing, however, the arbitrator explicitly relied on "the City's commitment to honor its promise that there are no significant changes in existing benefits in the health insurance plan and to be governed by the hearing record on this commitment." The selection of the City's offer was thus specifically conditioned as follows:

> It is understood that as a result of its testimony at the hearing and the arguments in the City's briefs its final offer on health insurance is to be interpreted in the manner I have described in the Opinion section of this report.

The arbitrator's treatment of the City's health insurance proposals is at the heart of the present litigation. A more detailed discussion of the insurance proposals is therefore necessary for an understanding of the parties' positions and our analysis. We describe below four areas in which, according to the Association, the language of the City's final offer alters health insurance provisions in the existing agreement, contrary to the arbitrator's interpretation based upon testimony at the hearing.[3] With respect to each area, the existing language is compared to the City's final

---

[3] The arbitrator specifically addressed *eight* health care provisions he determined to be at issue in the proceeding before him. We do not discuss here the provisions of the City's final offer acknowledged by the arbitrator to be changes from the existing agreement, and deemed by the arbitrator to be reasonable or insignificant changes. Those matters go to the arbitrator's discretionary weighing of the competing final offers, and are not at issue on this appeal. We highlight here only those provisions which the arbitrator concluded were not changes from the status quo based on the testimony of City officials, despite the language contained in the City's final offer.

offer and to the arbitrator's interpretation as set forth in the award:

1. An existing provision made health insurance available to the spouse and dependents of an "officer who dies before the officer or spouse becomes eligible for Medicare," and obligated the City to pay premiums "until the spouse becomes eligible for Medicare or remarries." The City's final offer substitutes "retiree" for "officer"; changes the termination from the spouse's Medicare eligibility date to the "date that the retiree would have been age 65"; and drops any mention of City payment of premiums. The arbitrator relied on statements by the City's mayor that "spouses of officers who die would be treated the same as spouses of retirees who die," and that spousal coverage would continue until the spouse's Medicare eligibility, concluding that testimony by City officials thus "negate[s] any bad effects of the new wording."

2. The existing agreement granted health insurance coverage eligibility for an officer who went on disability pension, for any reason, after five years service as an "employee." The City's final offer required the qualifying service to be as a "sworn police officer" and separated duty and non-duty disabilities, requiring five years service for the former but ten years for the latter. The arbitrator acknowledged that the ten year vesting requirement for non-duty disability was "new and is a change that the City intended," but he interpreted certain exhibits as showing "that the City intends that its dates are to be used to measure service requirements rather than the later dates that the Association has used to show when the person became a sworn police officer."

3. The existing agreement allowed retirees to retain health insurance eligibility until they "became

eligible for Medicare." The City's final offer amended this language to "eligible for medicare or reaches age sixty-five (65)." The Association's concern was that the age for Medicare eligibility might be postponed to sixty-seven or older. The arbitrator felt the possibility of such a change in the near future was unlikely, but in any event that:

> [T]he City's general position that it does not intend to take away any benefits that the officers in the unit now enjoy, the City's proposed change of wording must be interpreted to mean that retirees are covered by the health insurance policy until they are eligible for Medicare.

4. The existing agreement, as well as the City's final offer, provided for retirees and spouses to be eligible for Medicare supplemental insurance through the City's group carrier. While the Association's "perceived difference" between the old provisions and the new proposal are not entirely clear from the award, the arbitrator concluded that "the hearing record shows that City officials testified that the City's proposal does not change benefits as they existed under the old agreement."

After the arbitrator issued the award, the City sent the Association a "revised health insurance article" which it claimed was "consistent with the City's commitment made to the police officers, before, during and after the arbitration hearing began." The Association then filed this action seeking to have the award vacated or modified. The trial court concluded that the arbitrator "exceeded his authority and jurisdiction" by modifying the City's final offer and that the award "is not a final and full [disposition] of the controversy."

The court vacated the award under § 788.10(1)(d), STATS.[4]

## ANALYSIS

*a. Standard of Review.*

[1]

Section 111.77(7), STATS., provides that arbitration proceedings conducted under that section "shall be governed by ch. 788." Section 788.10(1), STATS., in turn, sets forth the grounds upon which a court "must" vacate an arbitration award, two of which are at issue here: where an arbitrator exceeds his or her powers, or where the arbitrator fails to make a "mutual, final and definite award." Despite the specific statutory directives applicable to court review of arbitration awards issued under § 111.77, STATS., the parties strongly dispute the proper standard for our review.

The City urges that we apply the extremely deferential, "hands off" standard generally enunciated in court reviews of grievance arbitration awards:

[T]he court will not overturn the arbitrator's decision for mere errors of law or fact, but only when "perverse misconstruction or positive misconduct

---

[4] The trial court declined to modify the award under § 788.11(1), STATS., concluding that no grounds for modification under the statute had been established. We agree. The Association requests in the alternative that we modify the award "by issuing a decision incorporating the [Association's] final offer." The Association's brief, however, provides no authority for such an order on these facts, and its argument for such relief is cursory and undeveloped. We will not address it further. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992).

[is] plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy." . . . These narrow grounds for overturning an arbitrator's award are echoed in the controlling statute on arbitration, sec. 788.10, Stats., and especially in sec. 788.10(1)(d).

*City of Madison v. Madison Prof'l Police Officers Ass'n,* 144 Wis. 2d 576, 586, 425 N.W.2d 8, 11 (1988) (quoted source and citation omitted). The Association, however, notes that one rationale for this deferential standard of review is that the parties have contracted for binding arbitration of grievances in an existing contract. *See id.* at 585, 425 N.W.2d at 11. Since interest arbitration is a creature of statute, and not the voluntary choice of contracting parties, the Association would have us apply the "considerably more expansive" standard of review set forth in § 227.57, STATS., which governs court review of the administrative decisions of state agencies.

We decline, as did the trial court, to adopt the Association's position on standard of review. Even though the arbitrator was appointed by the WERC, our review is of the arbitrator's award, not an agency decision, and § 227.57, STATS., does not apply to this dispute; § 788.10(1), STATS., does. *See Glendale Prof'l Policemen's Ass'n v. City of Glendale,* 83 Wis. 2d 90, 100–01, 264 N.W.2d 594, 599–600 (1978). This does not mean, however, that we conclude that the "hands off" standard urged by the City is necessarily appropriate here. That standard might apply if our review was of an arbitrator's alleged failure to weigh the merits of the parties' final offers under the criteria of § 111.77(6), STATS. *See City of Manitowoc v. Manitowoc Police Dep't,* 70 Wis. 2d 1006, 1016–18, 236 N.W.2d 231, 237–38 (1975). Our review in this case, however, encompasses

whether the arbitrator complied with the mandate of § 111.77(4)(b), that he "select the final offer of one of the parties . . . without modification," and whether his final product constituted a "mutual, final and definite award" under § 788.10(1)(d). The question for us is whether the arbitrator kept within his statutory authority and whether he produced a legally sufficient award, not whether he selected the proper offer for "right" reasons.

The City relies heavily on *City of Manitowoc* in its argument urging us to confirm the arbitrator's award. We discuss the analysis and holding of *Manitowoc* in greater detail below. For present purposes, however, we note that the supreme court did not enunciate a deferential or "hands off" standard for review of the issue which the City concedes is similar to that before us here: an arbitrator's action alleged to be in excess of his statutory powers, or an imperfect execution of those powers. *City of Manitowoc*, 70 Wis. 2d at 1011, 236 N.W.2d at 234–35. Rather, the court proceeded directly to a de novo consideration of whether the arbitrator had improperly "modified" a final offer or simply restated it, consistent with the parties' intent, in order to "comprise a proper, final arbitration award."[5] *Id.* at 1013, 236 N.W.2d at 235–36.

_____

[5] Later in the opinion, in reviewing whether the arbitrator "failed to consider the factors made relevant by sec. 111.77(6)," the supreme court did adopt a deferential standard: "There being evidence on the record in support of the award made, vacation on the basis of misconduct by an award wholly without support is not 'clearly and convincingly' shown." *City of Manitowoc v. Manitowoc Police Dep't,* 70 Wis. 2d 1006, 1016, 1018, 236 N.W.2d 231, 237–238 (1975) (quoted source omitted).

**[2]**

Finally, in *Glendale Prof'l Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 264 N.W.2d 594 (1978), the supreme court acknowledged the general "hands off" attitude toward review of grievance arbitration awards, *id.* at 98, 264 N.W.2d at 599, and noted the "manifest disregard of the law" standard urged by the City here. *Id.* at 99 n.2, 264 N.W.2d at 599. Nonetheless, the court concluded that the issue before it, "the relationship between two state statutes," was "within the special competence of the courts" and it undertook a de novo review of the arbitrator's decision.[6] *Id.* at 100–01, 264 N.W.2d at 600.

██

We conclude that our standard of review is not governed by whether the matter before us involves a grievance as opposed to an interest arbitration award. Rather, the inquiry must be whether the issue presented involves the scope of an arbitrator's statutory authority, as opposed to the arbitrator's discretionary weighing of the parties' offers in light of statutory factors. The present dispute involves the former issue, and is thus a question of law. We therefore review the award de novo to determine whether the arbitrator acted within his statutory authority.

----

[6] The initial issue addressed in *Glendale* was whether a dispute over promotion practices was arbitrable. *Glendale Prof'l Policemen's Ass'n v. City of Glendale,* 83 Wis. 2d 90, 98–99, 264 N.W.2d 594, 599 (1978). We recognize that the present dispute does not involve a question of arbitrability. The supreme court in *Glendale*, however, recognized that threshold questions regarding an arbitrator's authority raised under § 788.10(1)(d), STATS., can involve questions of law which are appropriately reviewed de novo. *Id.* at 98–101, 264 N.W.2d at 598–600.

## b. "Modification" of the City's final offer.

The City's argument is straightforward: the arbitrator did not "modify" its final offer, but only interpreted it consistent with the City's intent as demonstrated at the arbitration hearing. The arbitrator's action here, according to the City, is expressly ratified by the following passage from *City of Manitowoc*, 70 Wis. 2d at 1013, 236 N.W.2d at 235:

> Although sec. 111.77(4)(b), Stats., the form of arbitration under which the parties were proceeding, declares that the arbitrator shall select the final offer of one of the parties and then issue an award incorporating that offer "without modification," such language does not forbid restatement of the offer to comprise a proper, final arbitration award. The statutory language clearly refers to alterations of items in the offer contrary to the intent of the offering party.

We conclude, however, that the *Manitowoc* analysis is inapposite, and that here, the arbitrator did exceed his authority under § 111.77(4)(b), STATS., by modifying the City's final offer instead of "select[ing a] final offer . . . without modification." Moreover, as we later discuss, rather than "restating" the offer to "comprise a proper, final arbitration award," the arbitrator's action produced an award that is other than a "final and definite" award required by § 788.10(1)(d), STATS.

In the four areas described above, the arbitrator acknowledged that he was awarding health insurance provisions that clearly differed from the wording of the City's final offer. Most notable of these were: (1) including spouses of deceased active officers, rather than "retirees," under the coverage continuation provisions;

101

(2) terminating such coverage when a spouse attained Medicare eligibility instead of when the deceased retiree would have attained age sixty-five; and (3) determining eligibility for coverage following disability based on total years of employment rather than on years served in the capacity of a "sworn officer." That these modifications went beyond a mere "interpretation" of the language in the City's final offer is demonstrated by the City's failed attempt to withdraw the health insurance provisions from its final offer, and its post-award redrafting of the provisions to comply with the arbitration award.

We agree with the Association that these modifications of the City's final offer undermine the purpose of final offer arbitration under § 111.77(4)(b), STATS., which is "to induce the parties to bargain in good faith to reach an agreement or at least to narrow the differences between the parties to the greatest extent possible." *Milwaukee Deputy Sheriffs' Ass'n v. Milwaukee County*, 64 Wis. 2d 651, 656, 221 N.W.2d 673, 675 (1974). If a party is allowed to back-pedal from its positions in a final offer instead of defending those positions before an arbitrator, the incentive for a party "to develop the most reasonable position" prior to arbitration is lost.

> The overriding purpose of the final-offer procedure . . . is to induce the parties to make their own compromises by posing potentially severe costs if they do not agree. In other words, a successful final-offer procedure is one that is not used; one that induces direct agreement during the proceedings; or, using a less rigorous definition of success, one that substantially narrows the area of disagreement.

*Id.* at 657, 221 N.W.2d at 675–76 (quoting Gary Long & Peter Feuille, *Final Offer Arbitration: "Sudden Death" in Eugene*, 27 INDUSTRIAL & LABOR RELATIONS REV. 186, 202 (1974)).

We therefore conclude that the arbitrator "exceeded [his] powers" by failing to incorporate the City's final offer in the award "without modification" as required under § 111.77(4)(b), STATS. The trial court did not err in vacating the award under § 788.10(1)(d), STATS.

### c. *Failure to issue "final and definite award."*

We have concluded above that there are sufficient grounds under § 788.10(1)(d), STATS., to vacate the arbitrator's award as being in excess of his powers. We believe it important, however, to also address the Association's second argument: that the award should be vacated because it is not "final and definite" as required under the same subsection. A discussion of this issue will further elucidate the distinction between this case and *City of Manitowoc v. Manitowoc Police Dep't,* 70 Wis. 2d 1006, 236 N.W.2d 231 (1975), where an arbitrator's "restatement" of a party's final offer to achieve definiteness was affirmed.

In *Manitowoc,* the City's final offer had proposed that a residency requirement be included in the contract, expressly confirming "a de facto policy of residence" that had been previously enforced by the City. The Association "denied the inclusion of the city regulation in the agreement." The arbitrator's award provided that "police officers shall not be required to live within the City of Manitowoc." *Id.* at 1011, 236 N.W.2d at 235. In affirming the trial court's confirmation of the award, the supreme court stated:

To declare that the arbitrator erred by not awarding the form of the issue now asserted by the city as proper would be to impliedly sanction avoidance of that duty. The parties would be left in the same position as if arbitration had not occurred. Since an arbitration award must finally settle the controversy, *Garstka v. Russo* (1967), 37 Wis. 2d 146, 150, 154 N. W. 2d 286, the issue must be phrased to that end.

The arguments and evidence presented to arbitrator Hales indicated that the parties desired the core issue settled. Only the form of their submitted statements would lead to the conclusion that Local 731 desired an award that left the core issue undetermined. This result could not be sanctioned by the established law regarding arbitration. The error lay in the inappropriate, unarbitrable phrasing of the dispute, not in the arbitrator's fashioning of a complete and final determination of the subject.

*Id.* at 1012–13, 236 N.W.2d at 235.

Here, however, the net result of the arbitrator's action was to inject uncertainty into the proposals put forward by the City in its final offer. The arbitration award provides that "[t]he final offer of the City is chosen as the award in this proceeding." The award did not stop there, but went on to provide:

It is understood that as a result of its testimony at the hearing and the arguments in the City's briefs its final offer on health insurance is to be interpreted in the manner I have described in the Opinion section of this report.

If the opinion section had provided precise interpretations of arguably ambiguous health insurance provisions in the City's offer, the award may well have been worthy of characterization as a restatement to

achieve definiteness consistent with the holding of *Manitowoc*. Unfortunately, the arbitrator "described" the provisions of the City's health insurance proposal in the opinion section of the award with imprecise comments including the following:

> In testimony at the hearing by City witnesses there were other instances where responsible City officials testified that no changes were intended in the benefits under the old agreement even where words have changed.
>
> . . . .
> . . . [T]he Mayor's response to the criticism . . . would seem to negate any bad effects of the new wording.
>
> . . . .
> . . . In view of the City's general position that it does not intend to take away any benefits . . . the City's proposed change of wording must be interpreted to mean that retirees are covered . . . until they are eligible for Medicare.
>
> . . . .
> . . . [T]he hearing record shows that City officials testified that the City's proposal does not change the benefits as they existed under the old agreement.

One difficulty with relying on these interpretations based on testimony from City officials at the hearing is that "[n]o formal record was kept other than the arbitrator's handwritten notes," thus making future interpretation of specific provisions at least in part dependent upon the memories of those present regarding what the City's witnesses said at the hearing. Another difficulty is that, with respect to some of the City's proposed health insurance provisions, the arbitrator concluded that the City *did* intend to change

105

benefits from what had been provided in the existing agreement. Where would the parties turn should a future dispute arise as to the meaning of a provision in the City's final offer that was not specifically commented upon by the arbitrator? May they assume that the wording of the provision controls, or must they ponder whether the "City's general position" that no change in benefits was intended applies to the disputed provision?

Since the arbitrator failed to make an award that was "final and definite," we conclude that the arbitrator not only exceeded his powers, but also "imperfectly executed" them under § 788.10(1)(d), STATS.

*By the Court.*—Order affirmed.