SEITHER & CHERRY CO. *et al.*, Petitioners-Appellees, *v.* ILLINOIS BANK BUILDING CORPORATION *et al.*, Respondents-Appellants

Fourth District   Nos. 16435, 16447 cons.

Opinion filed April 9, 1981.—Rehearing denied May 12, 1981.

Louis E. Siciliano, of Olympia Fields, and J. Robert Walden, of Mays & Walden, of Quincy, for appellants.

John T. Robertson and Delmer R. Mitchell, both of Schmiedeskamp, Robertson, House, Neu & Mitchell, of Quincy, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

Arbitration.

Award to petitioners.

After two years under advisement, the trial court affirmed the award.

We affirm them both.

The players in this drama and their respective roles are as follows:

*Quincy-Peoples Savings & Loan Association*—the respondent in this action upon whose property the construction work was performed;

*Illinois Bank Building Corporation*—a respondent who held a construction management contract with Quincy-Peoples;

*Seither & Cherry Company*—a petitioner who was responsible for the plumbing and ventilation portions of the remodeling project;

*Brown Electric Construction Company*—a petitioner responsible for the electrical work on the project;

*Heidbreder Brothers Insulation Service, Inc.*—a petitioner responsible for the installation of acoustical ceiling; and

*PALCO Insulation and Sales* (not a party to this action), who performed the insulation of piping, plumbing and air ducts.

### FACTS

On July 23, 1975, Seither, Brown, and Heidbreder demanded arbitration of their claims for monetary damages against Quincy-Peoples and Illinois Bank. According to the demands, petitioners suffered monetary damages when respondents unreasonably delayed completion of the construction project.

One week later, respondent Quincy-Peoples notified the American Arbitration Association that it did not consent to arbitration and that it felt it had no agreement with the petitioners to arbitrate disputes. On August 11, 1975, the AAA, through petitioners' attorney, responded that Quincy-Peoples submitted to arbitration through its agreement with Illinois Bank, which incorporated Illinois Bank's contracts with the petitioner-subcontractors. On August 13, 1975, Quincy-Peoples again denied it was subject to arbitration. On August 26, 1975, the AAA determined that an issue of arbitrability existed which could be decided by the arbitrator.

The arbitration hearings commenced on August 9, 1976, with the respondent, Quincy-Peoples, being represented.

William Bergman, a job superintendent for petitioner Seither, was the superintendent for the Quincy-Peoples job. Seither was responsible for plumbing and ventilation and phase 2 of the job which entailed the remodeling of the main building. (The entire construction project consisted of three phases, with only phase 2 being involved in this litigation.) As part of his regular duties, Bergman kept daily records. He testified from an abstract he made from the company's records as to various delays which occurred between February 2, 1973, and March 14, 1975.

John Ashley testified that he was a construction manager, general

manager, and vice president of petitioner Seither during the time the Quincy-Peoples job was performed. He also testified concerning certain delays. Over respondents' objections, Ashley was permitted to testify concerning the information used by petitioner in perfecting its bid. While Ashley did not actually prepare the bids, he examined and made notes of company documents in Keokuk, Iowa. These documents were not available at the hearing and apparently were not provided in discovery. Ashley testified that petitioner estimated the date of completion to be September 1973 with a total of 8,885 man-hours being expended. The actual man-hours spent totaled 14,036. The total contracted amount was for $293,408. Ashley computed petitioner Seither's loss due to the delays to be $55,660. In addition, PALCO, petitioner Seither's subcontractor, had made a claim for $13,209.50 due to the delay. Ashley determined petitioner Seither's loss through labor reports covering man-hours attributed to the delay and through the company's financial statements.

On cross-examination, Ashley stated he took into account delays occasioned by his company. The adjustments he made were matters of judgment on his part. He subtracted 469 hours from the estimated manpower overrun due to factors he felt were attributable to his company. Ashley stated he had no concrete evidence but that he felt the job went a minimum of 12 months beyond a reasonable completion date.

Robert Thomas, foreman for petitioner Brown Electric, stated his company contracted the electrical work. Although his company did not keep daily reports, he testified as to various delays his company experienced.

Donald Brown, the secretary-treasurer of Brown Electric, stated his company entered into a contract for phase 2 of the Quincy-Peoples job. The contract amount was $152,788. Their work was completed in midsummer 1975, and he figured his company's loss due to labor alone to be $24,776.50. When he prepared the initial bid, he estimated it would take 4,015 hours. (He determined this figure by consulting a manual of the National Electric Contractors Association.) His company spent a total of 5,719 hours on the job for an overrun of 1,776 hours (a subtraction of the total hours from the bid hours results in a difference of 1,704 hours.) Brown took these figures from time cards.

John Heidbreder, president of petitioner Heidbreder, stated he prepared a portion of the bid and submitted the entire bid. The contract amount was $32,000 for insulation of plumbing, piping and air ducts. At the time of the bid, his father was president of the corporation and Woodrow LeGrand was secretary-treasurer. Heidbreder's father died in February of 1973. John Heidbreder and LeGrand split up in August of 1974, at which time LeGrand formed PALCO and as part of the agreement assumed responsibility for the Quincy-Peoples job.

In December of 1973, Heidbreder entered into a $21,000 contract with Quincy-Peoples for installation of acoustical ceiling. His father prepared the bid. Heidbreder testified to certain delays his company experienced in putting in the ceiling. He estimated his company's loss due to fault on the part of respondents at somewhere between $1,500 and $2,900.

Alan Arp, the present owner of PALCO, stated his company suffered an out-of-pocket loss for labor and materials of $13,209.50.

After petitioners rested, respondent Quincy-Peoples made a motion to dismiss, claiming (a) they had no contract with any of the claimants and (b) they did not agree to arbitrate. The arbitrator denied the motion.

On August 25, 1977, the arbitrator entered his award finding that Quincy-Peoples was subject to arbitration by reason of its full participation in all hearings and further that Quincy-Peoples was bound by the arbitration agreement through the agency relationship existing between it and the Illinois Bank Building Corporation as architect, management consultant and general contractor. Seither was awarded damages in the total sum of $30,762.16, being comprised of the sum of $17,552.66 for the primary benefit of Seither, and $13,209.50 "for the benefit of PALCO" making its claim through petitioner Seither. The arbitrator found the damage testimony of Ashley with respect to the damage figure was speculative and the award of the primary claim of Seither was reimbursement only for job costs less total receipts. As to Brown Electric's claim, the arbitrator awarded the sum of $18,531.57. This award was based upon the total overrun of 1,704 hours caused by the unreasonable delay. The amount of damages claimed by Brown Electric was further reduced by 22%, representing overhead which the arbitrator found was nonrecoverable. Finally, Heidbreder Brothers was awarded $1,500 as its damages.

On November 22, 1977, both respondents filed applications to vacate the arbitrator's awards with the trial court. Respondent Illinois Bank asserted that the award to PALCO was unenforceable since it was beyond the arbitrator's powers because PALCO was not a party to the action and had no contract with Illinois Bank. It also alleged that the awards to the other petitioners were void in that they were procured by undue means because the testimony concerning damages was insufficient to establish their loss. Respondent Quincy-Peoples joined in Illinois Bank's motion and further claimed it had no agreement with petitioners Seither or Brown Electric to arbitrate.

On January 5, 1978, petitioners filed a motion to dismiss the applications to vacate the award. In this motion petitioners claimed that the fact that certain awards were procured by undue means must have appeared on the face of the award, which they did not. Additionally, the motion

claimed—with supporting exhibits—that Quincy-Peoples was subject to arbitration because (a) it had agreed to certain change orders with petitioner Seither and petitioner Brown Electric and, (b) Quincy-Peoples was estopped from denying that it was subject to arbitration since it did not request the court to stay the action pursuant to the Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 10, par. 102(b)).

On March 2, 1978, the trial court allowed the motion to dismiss as to undue means, denied it as to excess powers, and reserved the question of estoppel.

On March 22, 1978, respondent Illinois Bank filed an amended application again asserting undue means but arguing that it was evidenced on the face of the award. On March 23, 1978, respondent Quincy-Peoples adopted the amended application of respondent Illinois Bank.

On April 11, 1980, the trial court entered a memorandum opinion. The court initially affirmed the award in favor of Seither, Brown Electric and Heidbreder. The court found that Illinois Bank acted as the agent of Quincy-Peoples and that in the course of construction certain change orders were executed with Seither, Brown Electric and Heidbreder, by either Quincy-Peoples or its agent, Illinois Bank. The court further found that there was no contractual relationship between PALCO and any of the other parties except for Seither. The court found that the award "for the benefit of PALCO" must be set aside because it was apparent on the face of the award that the arbitrator had no authority to adjudicate or arbitrate the matter. The court thus affirmed the award except for the provision that awarded $13,209.50 for the benefit of PALCO. The award to Seither remained $30,762.16, and the trial court's action merely removed the restriction that a portion of the award was for the benefit of PALCO.

CAVEAT

The grounds upon which a court is empowered to vacate an arbitrator's award are set out in section 12(a) of the Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 10, par. 112(a)), which provides:

"Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

* * *

(3) The arbitrators exceeded their powers."

The object of arbitration is to avoid the formalities, delay and expenses of litigation in court. Judicial review of an arbitrator's award is more limited than appellate review of a trial court's decision. (*Garver v. Ferguson* (1979), 76 Ill. 2d 1, 389 N.E.2d 1181; *Wilcox Co. v. Bouramas* (1979), 73 Ill. App. 3d 1046, 392 N.E.2d 198.) Whenever possible, a court

must construe an award so as to uphold its validity, and gross errors of judgment in law or a gross mistake of fact will not serve to vitiate an award unless these mistakes or errors are apparent on the face of the award. (*Garver*; *Del Bianco & Associates, Inc. v. Adam* (1972), 6 Ill. App. 3d 286, 285 N.E.2d 480, *cert. denied* (1973), 410 U.S. 955, 35 L. Ed. 2d 688, 93 S. Ct. 1421.) Likewise, a mere allowance of too little or excessive damages will not raise a presumption of fraud in and of itself. (*Del Bianco*.) Even if it could be shown that the arbitrator used the wrong basis to calculate the award, a party would not be entitled to relief under section 12. *William B. Lucke, Inc. v. Spiegel* (1970), 131 Ill. App. 2d 532, 266 N.E.2d 504.

With these principles firmly in mind we now look to the arguments of respondents here on appeal.

I

Respondents initially argue that the arbitrator's awards to petitioners Seither, Brown and Heidbreder were procured by "undue means."

As to the award to petitioner Seither, respondents argue that it was incumbent upon Seither to adduce evidence as to the adequacy of its bid. Respondents reason that if the bid was unrealistically low, its damages may have been caused in whole or in part not by any delay in completion of the construction project by respondents, but by Seither's error in bidding. Respondents complain that while John Ashley testified as to the procedure and preparation of a bid, he did not prepare the bid in question. Furthermore, Ashley did not know how the projected completion date of September 1973 was developed. Respondents also complain of the way in which overrun hours were figured. For instance, Ashley testified from notes he made from the company's records which were not available at the hearing. Additionally, he applied certain judgment factors, which existed only in his head, in reducing the number of hours claimed by respondents. Respondents argue that on its face the award shows that the testimony of the principal witness, John Ashley, was speculative in that it makes a distinction between damages and reimbursement for job costs less total receipts where there is no evidentiary basis for this in the record.

■■ Respondents' argument in this court is rather unique. They claim that since adequate evidence was not produced to support the damage claim, the award is procured by "undue means" under the Act. It is rather clear that respondents are effectively trying to interpret the term "undue means" so as to allow this court to review the amount and the sufficiency of the evidence supporting the damages. As noted above, these questions are beyond our scope of review. (*Garver*; *Spiegel*.) Although we have found no case directly interpreting the term, we find that *undue means* as

used in section 12(a)(1) of the Act means something akin to fraud and corruption. "Undue means" goes beyond the mere inappropriate or inadequate nature of the evidence and refers to some aspect of the arbitrator's decision or decision-making process which was obtained in some manner which was unfair and beyond the normal process contemplated by the arbitration act.

We agree with petitioners that the awards made to Seither, Brown and Heidbreder and the reasons given indicate that the arbitrator considered the evidence and allowed damages only for the items he felt were approved. As petitioners note, the arbitrator found the damage testimony of Ashley to be speculative and reduced the damages claimed by Seither from $55,660 to $30,762.16. Additionally, the arbitrator awarded Brown Electric only $18,533.57 of its $24,776.50 claim.

## II

■■ Respondents next argue that the arbitrator exceeded his powers in awarding $13,209 to Seither "for the benefit of PALCO." Respondents argue that PALCO was not a party to the arbitration proceeding, and point out that the subcontract between Illinois Bank and Seither provided that the contract should not be assigned without the written permission of Illinois Bank. Respondents complain that no evidence was introduced that Illinois Bank had given its consent to the assignments to either Heidbreder or PALCO. Respondents also argue that since there was no agreement to arbitrate the claim, the arbitrator had no jurisdiction to enter the award for the benefit of PALCO and has exceeded his powers.

Petitioners respond that even if the arbitrator did in fact exceed his powers in this respect, it was not fatal insofar as the award is concerned since this aspect was corrected by the trial court. We agree. Although PALCO did not have a contract with respondents, its work was covered by the contract between respondent Illinois Bank and Seither, and PALCO's loss was presented as a portion of the loss sustained by Seither. Seither argues in this court that it was liable for the amount lost by PALCO and thus could recover said sums from respondent. Since this action was brought by Seither in its own right, respondents' claim as to the lack of consent to the assignment presents no defense to this action.

■■ Respondents further argue that the trial court erred in modifying the award by requiring the $13,209.50 award for the benefit of PALCO to be paid to Seither in its own right. Respondents claim that Seither produced no evidence as to its damage regarding the insulation of piping and duct work and thus it could not be damaged. Furthermore, respondents argue that Seither denied it was liable to PALCO for any damages.

Respondents have overlooked the testimony of Alan Arp as to the damages sustained by PALCO. Furthermore, Seither did not deny its

liability to PALCO but rather did not explicitly admit liability. The arbitrator or the trial court could have concluded that Seither was liable or would at some future date be liable to PALCO. Even if this conclusion was erroneous, our scope of review would preclude us from reversing.

### III

Finally, respondent Quincy-Peoples argues that the arbitrator exceeded his powers in awarding damages to Seither and Brown Electric against Quincy-Peoples where Quincy-Peoples had no agreement with Seither or Brown Electric to arbitrate disputes. We note that it is presumed that the arbitrator did not exceed his authority. *Wilcox Co.*

The arbitrator as well as the circuit court found that respondent Illinois Bank was acting as the agent of Quincy-Peoples when entering into the agreement with the subcontractors Seither and Brown Electric so that Quincy-Peoples is subject to arbitration pursuant to those agreements.

The construction management contract between Illinois Bank and Quincy-Peoples Bank provided that Illinois Bank as construction manager "acting as agent on behalf of the Owner, shall direct a performance of all work required for satisfactory completion of the project identified as the Quincy-Peoples Savings & Loan Association, Quincy, Illinois, * * *." Furthermore, the evidence presented at the arbitration hearing together with the documents executed by the parties indicate that Illinois Bank functioned as the agent of Quincy-Peoples for purposes of this construction project. In addition, evidence was presented that Quincy-Peoples had consented to certain change orders which were executed between Illinois Bank and the subcontractors.

We agree with both the arbitrator and the trial court and conclude that Illinois Bank acted as the agent of Quincy-Peoples and therefore the arbitrator did not exceed his authority.

The decision of the circuit court confirming the arbitrator's award as modified is hereby affirmed.

Affirmed.

GREEN and WEBBER, JJ., concur.