DOROTHY HENLEY, Plaintiff-Appellee, v. ECONOMY FIRE & CASU-
ALTY COMPANY, Defendant-Appellant.

First District (1st Division)   No. 85—3742

Opinion filed February 23, 1987.

Orner & Wasserman, Ltd., of Chicago (Norton Wasserman and Esther Joy Schwartz, of counsel), for appellant.

Michael R. Panter & Associates, of Chicago, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, Economy Fire & Casualty Company (Economy), appeals from a summary judgment which vacated and set aside the second amended arbitration award decided in favor of Economy and ordered the parties to rearbitrate the uninsured-motorist claim filed by plaintiff, Dorothy Henley. On appeal, Economy contends that the trial court erred in vacating the award because the Uniform Arbitration Act (the Act) (Ill. Rev. Stat. 1983, ch. 10, par. 101 et seq.) provides no statutory grounds for its determination. For the following reasons, we affirm the judgment of the trial court.

The underlying uninsured-motorist claim arose from an automobile collision involving motor vehicles driven by plaintiff and Vernell Baldwin, an uninsured motorist. At the time of the accident, plaintiff was insured by Economy under a policy which provided indemnification up to $10,000 for injuries caused by uninsured motorists. The policy also contained an arbitration clause which stated that any disputed insured-motorist claims would be submitted to a panel of three arbitrators. As a result of the dispute involved in plaintiff's claim, the matter was submitted to arbitration. Plaintiff appointed Francis Baumgart as her arbitrator. Economy appointed Ronald Broida, and Baumgart and Broida selected Michael Berman as the neutral arbitrator.

At the arbitration hearing on May 1, 1981, Raymond Armand, a co-worker of plaintiff's, testified that approximately 3:30 p.m. on June

1, 1979, he was waiting in his car, directly behind plaintiff's car, at the traffic signal at the intersection of Leavitt and Division. Plaintiff's car was the first car at the light. When the light turned green, Armand saw plaintiff proceed southbound into the middle of the intersection, where her car was struck by Baldwin's car, which was heading eastbound. Armand stated that Baldwin had been speeding. He had seen plaintiff attempt to swerve to avoid the collision, but the effort was too late. Armand also had heard Baldwin apologizing to plaintiff after the collision.

Plaintiff testified to essentially the same facts as did Armand, adding that before she had proceeded into the intersection, she had looked to both sides, but had not seen Baldwin's automobile until it was too late to do anything but attempt to swerve out of the way. A Chicago police officer also testified on plaintiff's behalf as to the damage to the automobiles.

Following the testimony of plaintiff's witnesses, Arbitrator Berman inquired if plaintiff intended to call any other occurrence witnesses. Plaintiff responded that she would be calling only medical witnesses unless defendant called an occurrence witness, in which case, she might call a rebuttal witness. Arbitrator Berman then inquired if there were any motions to be made regarding liability. In response, the following colloquy ensued:

> "ECONOMY: Well, perfunctorily, I'll make a motion on directed verdict, because the testimony of the Plaintiff herself is she failed to see the other car before the accident, the other vehicle before the accident.
>
> * * *
>
> BERMAN: Is that the basis for your motion?
> ECONOMY: Yes.
> BERMAN: Counsel, any response?
> PLAINTIFF: She said she did see the car. She swerved to avoid it. Independent witnesses have testified she had the green light. She proceeded in the intersection and she did swerve to avoid it. She saw the other vehicle before the crash. She had the green light. She, I think *** Liability is, I would argue, for the Finder of Fact."

Following a short adjournment during which the arbitrators deliberated over Economy's motion, Arbitrator Berman delivered the following decision, in pertinent part:

> "Based on the evidence that we have heard from the actual occurrence witness *** and the Petitioner ***, it becomes a question of fact as to whether or not the light *** was green or red

for the respective drivers as she entered the intersection. However, on the issue as to whether or not she actually saw the other driver prior to entering the intersection, we feel that the evidence is highly speculative.

* * *

The case of Thomas [v.] The Yellow Cab *** stands for the proposition that a green light does not give a driver an absolute right to enter an intersection without maintaining a proper lookout.

* * *

If the other driver was close enough to the intersection to be involved in a collision, he obviously was observable if [petitioner] *** had, in fact, looked using due care and caution for their own safety.

* * *

[I]t's the conclusion of the arbitrators that a directed finding for Respondent be entered ***."

Subsequently, the above oral decision was reduced to writing in a decision, dated May 18, 1981, addressed to Economy's attorneys and signed by Arbitrator Berman. Copies of the decision were allegedly sent to Arbitrators Broida and Baumgart, as well as to Sam Jaffe, purportedly plaintiff's attorney of record.[1] The written decision stated that it had been "the unanimous decision of all Arbitrators, to wit: Francis P. Baumgart, Ronald Broida and Michael H. Berman" to grant Economy's motion for a directed finding. The decision was signed only by Berman.

A few days later, a dispute arose as to whether the decision had actually been "unanimous." When Baumgart read the written decision, he wrote a letter to Berman, dated May 22, 1981, stating that he had not agreed to the directed finding and requested that his position be reflected in the record. Baumgart stated in his deposition that the arbitrators had not voted for a directed finding. In fact, when Berman had announced the oral decision to the parties at the hearing, Baumgart assumed Berman meant "majority" decision, not "unanimous" decision. In contradiction to Baumgart's statement, Berman stated in his deposition that prior to the issuance of the written decision, he had received a letter from Baumgart, dated May 11, 1981, which stated that he totally supported the decision. However, Berman further

---

[1]Pursuant to the transcript of the arbitration proceedings, plaintiff was represented by Michael Panter. There is nothing in the record to show representation by Sam Jaffe.

stated that following the May 11 letter, Baumgart telephoned Berman and told him that because he was "getting a lot of heat" from plaintiff's attorney, he was going to have to write a letter to Berman renouncing the fact that he had been part of the unanimous decision. The May 22 letter followed.

On June 16, 1981, plaintiff's attorney wrote a letter to Berman requesting reconsideration of the decision based upon case law set forth and discussed in the letter. After consulting with Broida, Berman notified plaintiff's attorney in a letter, dated June 25, 1981, that the request for reconsideration was denied on the ground that the arbitrators lacked jurisdiction to consider the request because more than 20 days had elapsed since the May 18 decision. Berman further stated in the letter that even if the arbitrators had jurisdiction, he and Broida had agreed that their original decision would remain unchanged.

On July 20, 1981, plaintiff filed a petition for declaratory judgment, requesting the court to declare the May 18 award null and void and to compel Economy to rearbitrate on the ground that, in violation of section 8(a) of the Act, plaintiff had never received a copy of the written award. While the suit was pending, Berman issued an amended written decision, addressed to Economy's attorneys, with copies indicated to Baumgart, Broida, and Jaffe. The amended decision consisted of a copy of the original decision with the following changes: (1) dated September 10, 1981; (2) the words "unanimous" and "all" were crossed out; (3) Francis P. Baumgart's name was crossed out; (4) the line: "THIS DECISION IS NUNC PRO TUNC TO MAY 18, 1981" was added; and (5) Broida's signature was added.

The parties then filed cross-motions for summary judgment. In an order dated October 11, 1984, the trial court granted plaintiff's motion and vacated the award for failure to comply with section 8(a) of the Act which requires that: (1) an arbitration award be signed by all the arbitrators joining in the award; and (2) a copy of the award be delivered personally or by mail to each party. In response, Economy filed a motion to reconsider which resulted in an order dated March 26, 1985, vacating the October 11, 1984, order and remanding the matter to the original arbitrators to correct procedural errors in the issuance of the arbitration award and to issue a new award in conformance with the Act.

Plaintiff then moved for reconsideration, alleging that no valid award had ever been issued; thus neither modification nor correction were appropriate remedies. Subsequently, in an order dated November 13, 1985, the trial court granted plaintiff's motion, vacated the arbitrator's award, and ordered the parties to rearbitrate the matter. In

reaching its decision, the court noted that Berman and Broida had issued a second amended arbitration award, dated May 14, 1985, *nunc pro tunc* as of May 18, 1981, restating the original decision which, pursuant to affidavits signed by plaintiff, plaintiff's attorney, and Sam Jaffe, was never received by them. The trial court further noted that Baumgart had never signed any correspondence to plaintiff's attorney, nor was he consulted on the various decisions which had been made by the other two arbitrators subsequent to the initial hearing. The court then vacated the award on the ground that matters subsequent to the hearing had acted to deprive plaintiff of a fair hearing. Economy's timely appeal followed.

■ The sole issue before this court is whether statutory grounds exist for the order which vacated the arbitration award and ordered rearbitration. The well-established purpose of arbitration is to achieve a final disposition of differences in a more expeditious and less costly manner than by litigation. (*Pillott v. Allstate Insurance Co.* (1977), 48 Ill. App. 3d 1043, 363 N.E.2d 460.) Although courts favor upholding the validity of an arbitration award (48 Ill. App. 3d 1043, 363 N.E.2d 460), section 12 of the Act empowers courts to vacate awards under certain circumstances. Section 12 states, in pertinent part:

"(a) Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party; [or]
\*\*\*

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party; \*\*\*." (Ill. Rev. Stat. 1983, ch. 10, par. 212(a).)

With respect to paragraph (4) above, section 5 of the Act states, in pertinent part:

"(b) The parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." Ill. Rev. Stat. 1983, ch. 10, par. 105(b).

In the present case, the arbitration hearing was conducted on May 1, 1981, at which time a directed finding was orally entered at the conclusion of plaintiff's evidence as to liability, which found plaintiff con-

tributorily negligent, thereby barring recovery.[2] In presenting its motion for a directed finding, Economy offered no supporting case law. Instead, the only reference to legal authority in support of the motion was made by Berman, who, in stating the decision, cited case law based upon the arbitrators' independent research. Economy claims that the oral decision was reduced to writing in a letter mailed on May 18, 1981. However, plaintiff denies having ever received a copy of the award. Thereafter, in a letter dated June 16, 1981, plaintiff's attorney requested that the arbitrators reconsider their decision based upon case law and legal argument set forth in the letter. Relying on section 9 of the Act, Berman denied the request, citing lack of jurisdiction because the request had not been made within 20 days of the May 18 decision. In addition, Berman stated that even if the arbitrators still retained jurisdiction, he had discussed the matter with Broida, and they agreed that their original decision would remain unchanged.

Section 9 of the Act provides that a party may apply for a change of award "within 20 days after delivery of the award to the applicant." The arbitrators may then modify or correct the award "upon the grounds stated in paragraphs (1) and (3) of subdivision (a) of Section 13, or for purpose of clarifying the award." The cited paragraphs of section 13 refer to modification or correction of "evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award," and of "form, not affecting the merits of the controversy."

Plaintiff's request for reconsideration did not seek modification or correction of figures, descriptions, or form; nor did it seek clarification of the award. Instead, plaintiff sought an opportunity to present her argument with appropriate legal support in response to Economy's allegation that plaintiff had been contributorily negligent in her failure to maintain a proper lookout when entering the intersection.[3] In our view, section 9 of the Act was not applicable to plaintiff's request for reconsideration and did not provide appropriate grounds for its denial. Further, under Illinois law, arbitrators retain jurisdiction over an award until a valid written award is written and delivered pursuant to section 8 of the Act. (See *Wilcox Co. v. Bouramas* (1979), 73

---

[2]The arbitrators' decision preceded Illinois' adoption of the doctrine of comparative negligence pursuant to *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886.

[3]Prior to Economy's motion for a directed finding, plaintiff had had no idea that the maintenance of a proper lookout was at issue. In its opening statement, Economy stated that the testimony of the uninsured motorist would establish that he, not plaintiff, had had the green light, and that plaintiff had entered the intersection on the red light.

Ill. App. 3d 1046, 392 N.E.2d 198.) In the case at bar, it is undisputed that the May 18 award did not conform to section 8 in either form or delivery. Thus, it is our opinion that until a valid written award was delivered to plaintiff, the arbitrators had jurisdiction to address plaintiff's request. Accordingly, we conclude that the arbitrators' failure to allow plaintiff the opportunity to present her legal response to Economy's motion violated her rights under section 5 of the Act and provided appropriate grounds for vacation of the award pursuant to section 12(a)(4) of the Act.

■ In addition, we also find that Berman's failure to discuss plaintiff's request for reconsideration with Baumgart is directly violative of the well-established rule that all arbitrators must act together and "be present, or *** be given an opportunity to be present, at each and every meeting, equally, whether the meeting be for the hearing of evidence, arguments of the parties, or for consultation or determination of the award. This is so, even when *** a majority award shall be valid." (*West Towns Bus Co. v. Division 241 Amalgamated Association of Street Electric Ry. & Motor Coach Employees of America, AFL-CIO* (1960), 26 Ill. App. 2d 398, 409, 168 N.E.2d 473.) In our view, Economy's argument that Baumgart's presence was irrelevant because the decision would have been the same is without merit. We find that the failure of all of the arbitrators to act together prejudiced plaintiff's rights and, accordingly, provided additional grounds for vacation of the award pursuant to section 12(a)(2) of the Act.

■ Finally, we also find grounds for vacating the award under section 12(a)(1) of the Act which refers to awards procured by "undue means." In *Seither & Cherry Co. v. Illinois Bank Building Corp.* (1981), 95 Ill. App. 3d 191, 419 N.E.2d 940, the court defined "undue means" as "some aspect of the arbitrator's decision or decision-making process which was obtained in some manner which was unfair and beyond the normal process contemplated by the arbitration act" (95 Ill. App. 3d 191, 197, 419 N.E.2d 940). In the present case, there are numerous allegations of conduct that were "beyond the normal process contemplated by the arbitration act," which we find cast serious doubt as to the propriety of the decision-making process. In addition to the undisputed conferences by fewer than all of the arbitrators, and the erroneous application of section 9 of the Act to deny plaintiff an opportunity to present her argument on the pivotal question of contributory negligence, the arbitrators misrepresented that the decision had been unanimous, and, after three attempts, failed to conform to the formal delivery requirements set forth in section 8 of the Act. In our opinion, the cumulative effect of this conduct supports the trial court's impres-

sion that the proceedings were "rather suspicious" and that certain factors would "taint" a remand to the same arbitrators.

For the aforementioned reasons, we affirm the judgment of the circuit court.

Affirmed.

QUINLAN, P.J., and O'CONNOR, J., concur.