DONALD D. HAHN *et al.*, Defendants and Counterplaintiffs-Appellants, v. A. G. BECKER PARIBAS, INC., *et al.*, Plaintiffs and Counterdefendants-Appellees.

First District (2nd Division)   No. 87—225

Opinion filed December 1, 1987.

Howard J. Stein and James E. Hanlon, Jr., both of Katten, Muchin, Zavis, Pearl, Greenberger & Galler, of Chicago, for appellants.

Michael J. Koenigsknecht and Paul J. Novack, both of Gardner, Carton & Douglas, of Chicago, for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Defendants-counterplaintiffs Donald D. Hahn, an individual, and Hahn, Holland & Grossman, a partnership (collectively Hahn), appeal from orders: (1) granting the motion for summary judgment of plaintiffs-counterdefendants A. G. Becker Paribas, Inc., a corporation, Becker Paribas Incorporated, a corporation, and Merrill Lynch, Pierce, Fenner & Smith, Inc., a corporation (sometimes collectively Becker), denying Hahn's motion for summary judgment, vacating an arbitration award entered in Hahn's favor, and remanding the parties' claims and counterclaims for arbitration *de novo*; and (2) denying Hahn's motion for reconsideration.

On appeal, we are asked to consider as issues whether: (1) the circuit court erred in granting Becker's motion for summary judgment and denying Hahn's motion for summary judgment (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005); and (2) the circuit court erred in denying Hahn's motion for reconsideration (Ill. Rev. Stat. 1985, ch. 110. par. 2—1203).

On July 28, 1983, Becker entered into a written contract with Hahn, which would prepare and furnish stock market research materials for Becker and, in return, Hahn would receive an annual fee of $600,000, payable in monthly installments, for a two-year period. The contract also provided that "[a]ny disputes, controversies or claims arising under or in regard to this Agreement shall be settled by arbitration under the applicable rules and regulations of the [National Association of Securities Dealers]" (NASD).

At some point between July 28, 1983, and November 5, 1984, coplaintiff-counterdefendant Merrill Lynch, Pierce, Fenner & Smith, Inc., purchased Becker and Becker apparently ceased to exist; it was succeeded by coplaintiff-counterdefendant Becker Paribas, Inc.

Becker terminated the contract by letter on November 5, 1984. Hahn filed a statement of claim with NASD on March 19, 1985, alleging that Becker terminated the contract without cause and, as a result of the breach, Hahn suffered monetary damages of at least $450,000. Becker filed an answer and counterclaim with NASD on May 3, 1985, denying liability under the contract and alleging a misappropriation of certain proprietary information by Hahn.

Hearings were conducted before a NASD-appointed arbitration panel (the panel) on December 10, 1985, February 4, 1986, and February 5, 1986. At the December 10, 1985, hearing, Becker immediately admitted its breach of the contract and liability for the breach. The issues remaining before the panel, therefore, were the extent of damages suffered by Hahn as a result of the breach, and Becker's counterclaim. Hahn requested $443,259 in damages; Becker maintained that Hahn was entitled to only $237,310.

At the hearing of February 4, 1986, Hahn's counsel presented records purporting to reflect attorney fees incurred by Hahn as a result of the arbitration. The records were marked for identification as "Exhibit 19." Hahn's counsel stated that the amount of fees identified in exhibit 19 was not complete. According to Hahn's attorney, legal fees incurred by Hahn through February 3, 1986, amounted to $21,267.65, a sum greater than the amount recorded in exhibit 19. There is no indication in the record that Hahn moved to admit exhibit 19 into evidence. Becker did not object to Hahn's request for fees.

Following the conclusion of hearings on February 5, 1986, the panel apparently determined that Hahn's award should include attorney fees incurred through the end of the hearings. The panel instructed a NASD staff attorney, Linda Garofola (Garofola), to obtain an updated statement of fees from Hahn's attorney, including fees claimed through the hearing process. The panel also instructed Garofola not to notify Becker of this request.

Garofola telephoned Hahn's counsel on the next day, February 6, advising him of the panel's request; he responded by letter the same day, stating that the records tendered at the February 4, 1986, hearing reflected $21,267.75 in fees incurred by Hahn through January 24, 1986, but fee services rendered to Hahn from January 25, 1986, through February 5, 1986, amounted to an additional $8,851, totalling $30,118.65 in legal fees. Neither the panel nor Garofola nor Hahn's counsel notified Becker of the panel's request or of the letter and fee statement mailed to Garofola by Hahn's counsel.

Garofola drafted the arbitration decision and submitted it to the panel for their signatures. The written decision was mailed to the parties on February 26, 1986. Hahn was awarded $333,120.53 in damages: $292,050 assessed against Becker for the breach; $10,951.88 in interest; and $30,118.65 in legal fees incurred by Hahn as a result of the arbitration.

Becker's counsel received a copy of the decision on February 26, 1986, and telephoned Garofola the following day to question the legal fees assessed against Becker. Garofola replied in writing, enclosing a copy of the fee statement prepared by Hahn and informing Becker's counsel that he could request a reopening of the hearings, but such hearings would be limited to the amount of attorney fees included in the award; the panel would not reconsider the initial determination to award legal fees to Hahn.

Becker filed a complaint against Hahn on April 17, 1986. Citing sections 12(a)(1), (a)(2) and (a)(3) of the Uniform Arbitration Act (the Act) (Ill. Rev. Stat. 1985, ch. 10, pars. 112(a)(1), (a)(2), (a)(3)); Becker alleged: the panel exceeded its authority in awarding attorney fees to Hahn; *ex parte* communications between NASD staff and Hahn's counsel were not revealed to Becker; Hahn received $8,000 more in attorney fees than were requested at the hearing; *ex parte* materials were solicited and received by the panel after the conclusion of the hearings and without Becker's knowledge; and the foregoing acts amounted to "undue means" within the meaning of the Act and misconduct prejudicial to Becker. Becker requested a vacatur of the award.

Hahn filed an answer and verified counterclaim in response, Hahn admitted supplying additional evidence to the panel but denied any misconduct or use of undue means prejudicial to Becker. Hahn also raised several affirmative defenses, arguing that: Becker waived any objection to the award; the complaint failed to state a cause of action; and the complaint was filed without reasonable cause, entitling Hahn to have attorney fees assessed against Becker. Hahn's counterclaim alleged that the award was final and binding on the parties and that Becker refused to pay the damages assessed against it. Hahn requested judgment confirming the panel's decision and a further award of fees, costs and interest.

Becker submitted a verified answer to Hahn's counterclaim on June 2, 1986, claiming that the award was not final and binding on the parties and should be vacated or modified.

On July 16, 1986, Becker moved the circuit court for partial summary judgment, contending that the panel exceeded its authority in awarding the fee and urged that the fee portion of the award be vacated. Hahn also filed a motion for summary judgment on July 16, refuting the existence of any grounds for vacating the award or genuine issues of material fact. Becker moved the circuit court for summary judgment anew on October 10, 1986, this time requesting vacatur of the entire arbitration award.

Following a hearing on November 17, 1986, the circuit court granted Becker's motion for summary judgment, denied Hahn's motion, vacated the award in its entirety and remanded the cause for arbitration *de novo*. At the hearing, the circuit court announced the following findings: the panel initiated *ex parte* contracts with Hahn's attorney and received additional evidence without notice to Becker. Also unbeknownst to Becker, the panel rendered an award which included the *ex parte* submission and its fee calculations. Such *ex parte* contacts call into question the fairness of the decision-making process and undermine the objectivity which must prevail at arbitration hearings. Solicitation of evidence following the hearings, without notice to opposing parties, is precisely the kind of conduct which justifies vacating the award under section 12 of the Act. The gravity of the misconduct, moreover, tainted the entire process and vacatur of the award could not be limited to the fee portion alone. Finally, the court concluded that the panel exceeded its authority in awarding the fees, which also warranted vacating the award.

On December 17, 1986, Hahn moved the circuit court for reconsideration, asserting that the court "misperceived" the chronology of events surrounding the *ex parte* submission: the panel received the

additional evidence *after* it decided to award full attorney fees to Hahn. Therefore, the fee statement submitted by Hahn "could not have played any part in the award other than to quantify the amount of fees requested." Hahn's motion was denied on January 12, 1987.

Hahn's notice of appeal, filed on January 16, 1987, appealed the order entered November 17, 1986, ruling on the cross-motions for summary judgment and vacating the award, and the order of January 12, 1987, denying Hahn's motion to reconsider.

## I

Hahn contends that the circuit court erred in granting Becker's motion for summary judgment and denying Hahn's motion for summary judgment, insisting that the panel's solicitation of *ex parte* evidence does not warrant vacating the entire award and also argues that the award is entitled to enforcement as a matter of law. See Ill. Rev. Stat. 1985, ch. 10, par. 111.

■■ Although arbitration is intended to achieve a final disposition of differences in a manner simpler, more expeditious and less expensive than litigation (*Pillott v. Allstate Insurance Co.* (1977), 48 Ill. App. 3d 1043, 1046-47, 363 N.E.2d 460; *Wilcox Co. v. Bouramas* (1979), 73 Ill. App. 3d 1046, 1050, 392 N.E.2d 198), nothing in this form of dispute resolution, either by statute or case law, suggests any relaxation of ethical standards by which the proceedings undertaken are to arrive at a conclusion. The Act identifies three bases warranting vacatur of the award, which are grounded upon violations of what are commonly recognized as ethical standards (Ill. Rev. Stat. 1985, ch. 10, pars. 112(a)(1), (a)(2), (a)(3)):

"(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in anyone of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers."

■■ Hahn notes correctly that the circuit court's oral findings appeared to limit its decision to violations of sections 12(a)(2) and (a)(3), although the order vacating the award and ruling on the cross-motions for summary judgment did not specifically identify the statutory grounds underpinning its conclusions. An appellee, however, may raise an issue not previously ruled upon by the circuit court if the necessary factual basis for determination of the issue is in the record. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417.) Here, the facts identified by Becker additionally indicate a viola-

tion of section 12(a)(1) of the Act, procurement of an award by "undue means." (Ill. Rev. Stat. 1985, ch. 10, par. 112(a)(1).) The facts so related are identical to those relied upon by the circuit court in vacating the award.

■■ ■ "Undue means" has been interpreted as akin to fraud and corruption; it refers to some aspect of the arbitrator's decision or decision-making process which was obtained in an unfair manner and beyond the normal processes contemplated by the act. (*Henley v. Economy Fire & Casualty Co.* (1987), 153 Ill. App. 3d 66, 73, 505 N.E.2d 1091; *Seither & Cherry Co. v. Illinois Bank Building Corp.* (1981), 95 Ill. App. 3d 191, 196-97, 419 N.E.2d 940.) *Ex parte* contact involving disputed issues raises a presumption that the arbitration award was procured by fraud, corruption, or other undue means. *Crosby-Ironton Federation of Teachers, Local 1325 v. Independent School District No. 182, Crosby Ironton* (Minn. 1979), 285 N.W.2d 667, 670.[1]

Hahn urges that the construction of "undue means" in *City of Manitowoc v. Manitowoc Police Department* (1975), 70 Wis. 2d 1006, 236 N.W.2d 231, should govern. In *Manitowoc*, the court found that "undue means" contemplated a more comprehensive area of fraudulent and corrupt acts, and simultaneously restricted this expanded area of behavior to those actions which are inappropriate, unjustified or improper methods of procuring an arbitration award. (*Manitowoc*, 70 Wis. 2d at 1019, 236 N.W.2d at 238.) Furthermore, *ex parte* contacts do not justify vacating an arbitration award *per se*; there must also be a showing of improper intent or influence. (*Manitowoc*, 70 Wis. 2d at 1019, 236 N.W.2d at 239.) The Wisconsin arbitration statute, however, although in some respects similar to the Act, is not the same legislation adopted in Illinois and Minnesota. (Compare Ill. Rev. Stat. 1985, ch. 10, par. 101 *et seq.* and Minn. Stat. Ann. §572.08 *et seq.* (West Supp. 1987) with Wis. Stat. Ann. §788.01 *et seq.* (West 1981).) Where a court has access to decisions from Illinois and other States interpreting the Act, *Manitowoc* assumes the lowest position in the hierarchy of preferable case law.

■ In the case *sub judice*, the *ex parte* communications between the panel and Hahn clearly constitute "undue means." First, there was no basis whatsoever in the dispute to justify an award of attor-

---

. [1]Section 20 of the Act states: "This Act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." (Ill. Rev. Stat. 1985, ch. 10, par. 120.) Minnesota has adopted the Act. (Minn. Stat. Ann. §572.08 *et seq.* (West Supp. 1987).) Thus, *Crosby-Ironton* and cases from other States adopting the Act are entitled to greater than usual deference in interpreting the statute. *Garver v. Feguson* (1979), 76 Ill. 2d 1, 389 N.E.2d 1181.

ney fees. The panel was bound to recognize that under section 10 of the Act (Ill. Rev. Stat. 1985, ch. 10, par. 110), attorney fees were not to be included in the award unless otherwise provided in the agreement to arbitrate. (*Himco Systems, Inc. v. Marquette Electronics, Inc.* (1980), 86 Ill. App. 3d 476, 480, 407 N.E.2d 1013; *Board of Education v. Champaign Education Association* (1973), 15 Ill. App. 3d 335, 340, · 304 N.E.2d 138; *School Committee v. Dever* (1979), 8 Mass. App. 920, 921, 395 N.E.2d 900, 900; see also *Doherty v. School Committee* (1973), 363 Mass. 885, 885, 297 N.E.2d 494, 495; *Bingham County Comm'n v. Interstate Electric Co.* (1983), 105 Idaho 36, 42, 665 P.2d 1046, 1052; *Beach Resorts International, Inc. v. Clarmac Marine Construction Co.* (Fla. App. 1976), 339 So. 2d 689, 690-91; *County of Clark v. Blanchard Construction Co.* (1982), 98 Nev. 488, 492, 653 P.2d 1217, 1220.) The agreement to arbitrate in this case contained no such authority.

Furthermore, Hahn had marked as exhibit 19 for identification copies of its attorney fees invoices for legal services. Hahn's attorney noted that the total amounted to $21,267.65; however, no testimony concerning the hours, services rendered or reasonableness of the charges appears in the record. One of Hahn's witnesses merely concluded that the bills were not duplicative of other bills for legal services. There is no showing in the record that exhibit 19 for identification was ever offered or received in evidence before the panel. This enigmatic state of affairs was compounded by the *ex parte* solicitation by Garofola on behalf of the panel for updated attorney fees from Hahn's counsel, with directions not to notify Becker, so that additional fees would be improperly added onto fees which the panel has no authority to award in the first place and for which there was no evidence received by the panel. These procedures well qualify for the appellation "undue means" as an aspect of the decision-making process which was beyond the normal process contemplated by the Act. (*Henley*, 153 Ill. App. 3d at 73; *Seither*, 95 Ill. App. 3d at 196-97.) The fee statement submitted by Hahn to the panel clearly was an aspect of the decision-making process since, in a deposition submitted in support of Becker's motion for summary judgment, Garofola indicated that the panel's decision was rendered after Garofola received the solicited fee statement and Hahn's additional $8,851 bill was included in the award assessed against Becker.

Second, from the foregoing account, it is clear that the panel's method in obtaining the evidence was contrary to section 5(b) of the Act, which provides that disputes will be subject to a hearing where "parties are entitled to be heard, to present evidence material to the

controversy and to cross-examine witnesses appearing at the hearing." (Ill. Rev. Stat. 1985, ch. 10, par. 105(b).) Soliciting evidence ultimately material to the arbitration award, without granting opposing counsel the opportunity to challenge that evidence, ineluctably contravenes the hearing procedure prescribed by the Act.

## II

■ The next issue we must consider is whether the *ex parte* submission also constituted misconduct prejudicing Becker's rights. (Ill. Rev. Stat. 1985, ch. 10, par. 112(a)(2).) Hahn maintains that mere *ex parte* contacts, without more, are not "misconduct," and that solicitation of the fee statement was not prejudicial to Becker's interests. Further, Hahn claims that Becker waived this issue.

*Ex parte* acts by arbitrators have been held to constitute misconduct. (*In re State v. Davidson & Jones Construction Co.* (1984), 72 N.C. App. 149, 153, 323 S.E.2d 466, 469; *Carolina-Virginia Fashion Exhibitors, Inc. v. Gunter* (1976), 291 N.C. 208, 221, 230 S.E.2d 380, 389.) Furthermore, in *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.* (5th Cir. 1979), 607 F.2d 649, 653, the court held that the *ex parte* receipt of evidence by arbitrators from one party, without notice to the other party, was "misbehavior"[2] prejudicial to the innocent party's rights. In each of the foregoing decisions, *ex parte* contacts were held to violate fundamental principles of fairness enunciated in the arbitration statutes: awards must be based solely on evidence presented at the hearings, with all parties in attendance. (*Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d at 653; *In re State v. Davidson & Jones Construction Co.*, 72 N.C. App. at 153, 323 S.E.2d at 469; *Carolina-Virginia Fashion Exhibitors, Inc. v. Gunter*, 291 N.C. at 221, 230 S.E.2d at 389.) As in the procurement of evidence by "undue means," this type of misconduct undermines the objectivity which must prevail if the arbitration process is to succeed.

■ The submission of the additional fee statement cannot be con-

---

[2]The grounds for vacating an arbitration award under the Act and the Federal arbitration statute are nearly identical. The Federal statute reads in relevant part (9 U.S.C. §10(c) (1982)):

"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

\* \* \*

(c) Where the arbitrators were guilty of \*\*\* any other misbehavior by which the rights of any party have been prejudiced."

strued as other than prejudicial to Becker's interests. Garofola's deposition testimony admitted delaying final computation of the award until the additional information was received. That *ex parte* fee statement from Hahn was included in the ultimate sum, assessed against Becker, thereby having a direct, monetary impact on Becker, without an opportunity for Becker to challenge that evidence.

■ Hahn's waiver argument is based upon Becker's silence: at the February 4, 1986, hearing, when Hahn introduced a statement of legal fees allegedly incurred as a result of the litigation; when Hahn stated its intention of recouping legal fees charged to Hahn through the end of the arbitration process; and when, in closing argument, Hahn reiterated its belief that it was entitled to attorney fees. When a party intentionally relinquishes a known right, either expressly, as by objection, or by conduct such as silence, inconsistent with an intent to enforce that right, waiver may be inferred. *Tri-City Jewish Center v. Blass Riddick Chilcote* (1987), 159 Ill. App. 3d 436, 440, 512 N.E.2d 363; *Wilcox Co. v. Bouramas*, 73 Ill. App. 3d at 1052; *Jean A. McCoy & Sons, Inc. v. La Salle County* (1977), 48 Ill. App. 3d 802, 804, 363 N.E.2d 442.

■ In the present case, Hahn's contention that Becker waived the right to object to the fee award is without merit. As previously noted, although the fee statement was marked for identification as exhibit 19, Hahn never moved to have it admitted into evidence. During the course of the hearing, when Hahn's documents were received into evidence, the following procedure was established: Hahn's attorney moved to admit the documents; the panel chairman asked for objections or Becker's counsel objected of his own accord; if any objections made were not sustained, the evidence was admitted. Becker's failure to object to the fee records, therefore, did not constitute waiver because Hahn never moved to admit this evidence.

■ Hahn also contends that Becker waived its right to have the award vacated by failing to request that the hearings be reopened, noting that Garofola's letter to Becker, dated February 27, 1986, invited Becker to seek a reopening of the hearings to address the attorney fee issue. By refusing to request further arbitration, Hahn asserts, Becker waived the right to later challenge the award. Section 12 of the Act does not condition a court's right to vacate an award on a prior petition to reopen hearings; a party need only believe that one of the five grounds to vacate an award exists in order to apply for a vacatur. (Ill. Rev. Stat. 1985, ch. 10, pars. 112(a)(1), (a)(2), (a)(3).) Moreover, section 12(b) indicates that the proper procedure to follow, once the decision is delivered, is to move to vacate the award. Ill.

Rev. Stat. 1985, ch. 10, par. 112(b).

## III

Does the additional information received by the panel mandate vacatur of the entire arbitration award, as was done by the circuit court? Hahn advocates restraint and argues that vacatur, if any, should be limited to the $30,118.65 in' legal fees. At the November 17, 1986, hearing, the circuit court expressed its belief that the "taint" of the panel's misconduct was so broad that a remand of all claims for arbitration *de novo* was unavoidable.

As we view the posture of this case, had the panel merely exceeded its power in awarding the fees, the appropriate remedy would have been to vacate and remand only that part of the award which represented their usurpation of authority. (*Saville International, Inc. v. Galanti Group, Inc.* (1982), 107 Ill. App. 3d 799, 801, 438 N.E.2d 509; *Board of Education v. Champaign Education Association*, 15 Ill. App. 3d at 340.) The panel's use of undue means and misconduct, however, calls into question the fairness and objectivity of the entire arbitration process. In *Goldsberry v. Hohn* (1978), 120 Ariz. 40, 583 P.2d 1360, the court vacated the award in its entirety, although only one of the issues raised on appeal addressed *ex parte* communications by the arbitrators. Similarly, in *Ministrelli Construction Co. v. Sullivan Brothers Excavating, Inc.* (1979), 89. Mich. App. 111, 279 N.W.2d 593, the arbitrators heard claims and counterclaims raised by both parties, but *ex parte* activities by the arbitrators were held to justify vacatur of the whole award. See also *Carolina-Virginia Fashion Exhibitors, Inc. v. Gunter*, 291 N.C. at 221, 230 S.E.2d at 389.

Hahn insists that vacatur of the entire award was improper since the conduct of which complaint is made was' based upon a single incident—the *ex parte* communication. As has' been shown, however, no award of attorney fees was authorized to begin with. Further, the panel had not received in evidence any factual basis for its decision. Lastly, the panel directed its staff to refrain from advising Becker of its action. We cannot conclude from the foregoing that the circuit court had no bases upon which to consider the entire arbitration proceeding as tainted. (See *Crosby-Ironton*, 285 N.W.2d at 670; *Stefano Berizzi Co. v. Krausz* (1925), 239 N.Y. 315, 146 N.E. 436.) The circuit court here properly vacated the award in its entirety.

## IV

Hahn also appeals the circuit court's denial of its motion for reconsideration. Hahn moved the court to reconsider its ruling on the

cross-motions for summary judgment and vacatur of the arbitration award, asserting that the court misperceived the chronology of events leading to the panel's request for an additional fee statement from Hahn.

Garofola, in an affidavit submitted in support of Hahn's summary judgment motion, averred that the panel solicited the fee statement only after it decided to grant Hahn legal fees through the end of the hearings. Therefore, argued Hahn, any *ex parte* communications followed the panel's decision to award the fees; the *ex parte* contacts "played no other part in the award other than to quantify the amount of fees requested." The case law cited by Becker in support of its arguments, Hahn continued, involved *ex parte* communications completed before the arbitrators reached their decision and thus affected the award.

�they Whether a motion for reconsideration should be granted is within the circuit court's discretion (*Freeman v. Augustine's Inc.* (1977), 46 Ill. App. 3d 230, 236, 360 N.E.2d 1245), and its decision will not be reversed absent an abuse of that discretion (*Bethlehem Steel Corp. v. Tishman-Adams, Inc.* (1977), 45 Ill. App. 3d 1003, 1010, 360 N.E.2d 475). Hahn's motion did not purport to raise any new evidence, but merely reiterated facts already before the court. Hahn's attempt to distinguish this case from cases cited by Becker does not persuade: the instant panel solicited and received *ex parte* evidence from Hahn and intentionally denied notice thereof to Becker; the evidence sought and received *ex parte* related to an issue which the panel had no authority to consider *ab initio*; that evidence figured in the award ultimately issued by the panel; Becker had no opportunity to refute or challenge the additional evidence as prescribed by the Act. We find no abuse of the circuit court's discretion in denying Hahn's motion for reconsideration under these facts.

For the reasons above stated, the judgment of the circuit court must be affirmed.

Affirmed.

STAMOS and BILANDIC, JJ., concur.