LEE B. STERN AND COMPANY, Plaintiff-Appellant, v. DARRELL ZIMMERMAN et al., Defendants (Steven Rasof et al., Defendants-Appellees).

First District (3rd Division)   No. 1—93—3811

Opinion filed December 29, 1995.

Gerald L. Fishman, David A. Genelly, and Megan A. O'Brien, all of Fishman & Merrick, P.C., of Chicago, for appellant.

Lloyd Kadish, of Chicago, for appellees Steven Rasof, Gerald Mayer, and Alan Weinstein.

Garrett B. Johnson and Terri Ann Abruzzo, both of Kirkland & Ellis, of Chicago, for appellee Chicago Board of Trade.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Lee B. Stern & Co., appeals from an order of the circuit court: (1) denying plaintiff summary judgment on its motion to vacate that part of a Chicago Board of Trade (CBOT) arbitration award assessing attorney fees against plaintiff; and (2) granting summary judgment in favor of defendants, Gerald Mayer, Alan Wienstein and Steven Rasof, on their motion to confirm the CBOT award with respect to attorney fees assessed in defendants' favor. On appeal, plaintiff contends that the trial court erred in confirming the award of attorney fees. We reverse.

This appeal grew out of the events of October 22, 1992, on the financial room trading floor of the CBOT. On and prior to that date, plaintiff was a clearing member of the CBOT. Defendants were CBOT members and registered floor brokers. As floor brokers, defendants executed orders for other members and customers to buy and sell option contracts on the floor of the CBOT.

On October 22, 1992, Darrell Zimmerman (Zimmerman) and

Anthony Catalfo (Catalfo), two CBOT delegate members authorized to trade at the CBOT, bought and sold numerous option contracts. These contracts were traded through defendants, as well as other brokers, who executed the orders submitted by Zimmerman and Catalfo. As a result of these trades, plaintiff suffered a financial loss of $8.6 million.

On October 29, 1992, pursuant to CBOT rules and regulations (the CBOT Rules), plaintiff filed an arbitration claim before the arbitration committee of the CBOT. Plaintiff alleged that various individuals, including defendants, were responsible for its financial loss. With respect to defendants, plaintiff claimed that but for defendants' actions in filling Zimmerman's and Catalfo's orders, plaintiff's $8.6 million loss would not have occurred. Defendants filed a counterclaim seeking payment of their brokerage commissions for filling Zimmerman's orders. Defendants also requested attorney fees as the costs for pursuing the unpaid brokerage commissions and defending against plaintiff's claims.

The arbitrators awarded defendants their unpaid brokerage commissions. Finding that plaintiff's claims against defendants were meritless, the arbitrators awarded defendants attorney fees in the amount of $77,442.41 as costs for defending and claiming in the arbitration proceeding. The parties filed cross-petitions to vacate and confirm that part of the arbitration award granting attorney fees to defendants. The circuit court granted summary judgment in favor of defendants and against plaintiff, thereby confirming the arbitrators' award of attorney fees. Plaintiff contends on appeal that the trial court erred in confirming the award of attorney fees because (1) the arbitrators exceeded their powers and (2) a gross error of law appears on the face of the award.

■ It is well settled that when possible, a court should construe an arbitration award in a manner that upholds its validity. (*Rauh v. Rockford Products Corp.* (1991), 143 Ill. 2d 377, 386, 574 N.E.2d 636, 641, citing *Merritt v. Merritt* (1850), 11 Ill. 565.) While the arbitration scheme set forth in the Uniform Arbitration Act (the Act) contemplates a limited role for the courts, arbitration awards are still subject to judicial review. (710 ILCS 5/1 *et seq.* (West 1992).) Section 12(a) of the Act enumerates various grounds on which an arbitration award is to be vacated. Plaintiff relies on section 12(a)(3) of the Act, which states that the court shall vacate an award where "[t]he arbitrators exceeded their powers." (710 ILCS 5/12(a)(3) (West 1992).) Our supreme court has also established that the courts have the power to vacate an arbitration award where a gross error of law appears on the face of the award. *Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 477, 427 N.E.2d 1199, 1202.

■ We first address plaintiff's contention that the arbitrators exceeded their powers by assessing attorney fees against plaintiff. With respect to an arbitrator's authority to assess fees and expenses, the Act specifically states:

> "Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, *not including attorney's fees*, incurred in the conduct of the arbitration, shall be paid as provided in the award." (Emphasis added.) (710 ILCS 5/10 (West 1992).)

Thus, absent a contrary provision in the arbitration agreement, the Act authorizes arbitrators to assess all fees and costs associated with an arbitration proceeding, except for attorney fees. With respect to attorney fees, the statute neither permits nor prohibits the arbitrators' assessment of attorney fees. Rather, the Act delegates this decision to the parties. As such, an arbitrator's authority to assess attorney fees derives solely from the agreement to arbitrate. (See *Hahn v. A.G. Becker Paribas, Inc.* (1987), 164 Ill. App. 3d 660, 668, 518 N.E.2d 218, 223 (under section 10 of the Act, attorney fees are not to be included in an arbitration award unless otherwise provided in the arbitration agreement); see also *School Committee v. Dever* (1979), 8 Mass. App. 920, 921, 395 N.E.2d 900, 900; *County of Clark v. Blanchard Construction Co.* (1982), 98 Nev. 488, 491, 653 P.2d 1217, 1220.) The Act is to be construed "to make uniform the law of those states which enact it." (710 ILCS 5/20 (West 1992).) To achieve this end, our supreme court instructed us to show greater than usual deference to opinions of the courts of other jurisdictions with the Uniform Arbitration Act. *Garver v. Ferguson* (1979), 76 Ill. 2d 1, 8, 389 N.E.2d 1181, 1183.

■ We now turn to the arbitration agreement at issue to determine whether the arbitrators exceeded their powers by assessing attorney fees. In this case, the CBOT Rules constitute the arbitration agreement. Plaintiff contends that the arbitration agreement does not empower the arbitrators to assess attorney fees. Defendants argue that the CBOT Rules do authorize the arbitrators to include attorney fees in their award.

In support of their argument, defendants cite to two of the CBOT Rules. First, defendants point to Rule 600.00, which states:

> "Any controversy between parties who are members and which arises out of the Exchange business of such parties shall, at the request of any such party, be submitted to arbitration in accordance with regulations prescribed by the Board. Every member, by becoming such, agrees to arbitrate all such disputes with other members in accordance with this Rule and the regulations

prescribed by the Board pursuant to this Rule, and further agrees and obligates himself to abide by and perform any awards made thereunder." (Chicago Board of Trade Rules & Regulations § 600 (1993).)

Defendants contend, and the trial court agreed, that because the parties agreed to arbitrate "any controversy" arising out of exchange business, the arbitration agreement authorized the arbitrators to assess attorney fees. We disagree.

Courts considering similar "any and all controversy" language in arbitration agreements have found that such language does not authorize the arbitrators to assess attorney fees. In *Hahn*, 164 Ill. App. 3d at 668, 518 N.E.2d at 223, the court considered whether an arbitration agreement providing that "[a]ny disputes, controversies or claims" arising in connection with the agreement would be arbitrated, authorized the assessment of attorney fees. The court explicitly stated that the agreement did not grant the arbitrators the authority to impose attorney fees. See also *Bingham County Comm'n v. Interstate Electric Co., A Division of the L.E. Myers Co.* (1983), 105 Idaho 36, 39, 665 P.2d 1046, 1052 (where parties agreed to arbitrate all claims, disputes and other matters arising out of the agreement, the court found no contractual agreement granting the arbitrator the power to award attorney fees).

Defendants also argue that Rule 640.01 empowers the CBOT arbitrators to award attorney fees. Rule 640.01 provides:

"A schedule of arbitration fees shall be established from time to time by the Arbitration Committee, with the approval of the Board. The Arbitrators, in the award, shall fix expenses and assess fees, *in accordance with the Committee's schedule*, in whatever manner they deem appropriate." (Chicago Board of Trade Rules and Regulations § 640 (1993).)

Defendants argue that because the arbitrators may assess fees "in any manner they deem appropriate," the arbitrators were within their powers in assessing attorney fees. Taken out of context this language is a seemingly broad grant of authority. Defendants, however, fail to acknowledge that the immediately preceding clause restricts the arbitrators to assessing fees *in accordance with the committee's schedule*. If, as defendants suggest, the agreement intended to grant the arbitrators the authority to assess fees in any manner at all, with no restrictions, the agreement would not have instructed the arbitrators to assess fees in accordance with the committee's schedule.

"[P]arties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will

not be extended by construction or implication." (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 94, 242 N.E.2d 149, 151.) The clear language of the agreement in this case provides only that within the committee's fee schedule, the arbitrators are authorized to use their discretion in assessing fees. Our review of the fee schedule, which provides various hearing session and stenographic costs, reveals no language authorizing the arbitrators to award attorney fees. Thus, the arbitrators exceeded their powers by including attorney fees in the arbitration award.

■ Next, we address plaintiff's contention that a gross error of law appears on the face of the award. A reviewing court may only vacate an award on this basis where the court can conclude from the face of the award that the arbitrator was so mistaken as to the law that, if apprised of the mistake, the award would have been different. (*Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 477, 427 N.E.2d 1199, 1202.) For example, if an arbitrator cited to an old version of a statute that had subsequently been amended unbeknownst to the arbitrator. In such a case, a court could find a gross error of law on the face of the award and that but for that mistake the arbitrator would have reached a different result. In the case at bar, however, no such error appears on the face of the arbitrators' award.

For the reasons set forth above, the order of the trial court is reversed and that part of the arbitration award assessing attorney fees against plaintiff is vacated.

Affirmed in part; reversed in part and vacated in part.

TULLY and CERDA, JJ., concur.